[No. 670. Decided September 15, 1892.]

THE STATE OF WASHINGTON, *on the relation of W. H. Snell, Prosecuting Attorney for Pierce County, Appellant,* v. H. H. WARNER, *Respondent.*

MUNICIPAL CORPORATIONS—ANNEXATION OF TERRITORY—AMENDMENT OF CHARTER.

Under art. 11, § 10 of the constitution, authorizing a city of 20,000 or more inhabitants "to form a charter for its own government," and providing for amendments thereto, no authority is given such city to extend its boundaries by amendment to its charter; resort must be had to § 9 of "an act providing for the organization, classification, incorporation and government of municipal corporations" (Laws 1889–90, p. 136) for authority to extend the limits of any municipal body, however incorporated.

*Appeal from Superior Court, Pierce County.*

*W. H. Snell,* Prosecuting Attorney, and *Judson & Sharpstein,* for appellant.

*F. H. Murray,* and *J. C. Stallcup,* for respondent.

The opinion of the court was delivered by

STILES, J.—The nominal cause of action in this case is that the respondent is usurping the right to sit as a coun-

cilman from the sixth ward of the city of Tacoma; but the real matter in issue is the question whether or not the territory included within the sixth ward is legally a portion of that city. Since the 25th day of October, 1890, the city of Tacoma has been acting under a municipal charter adopted in pursuance of art. 11, § 10 of the constitution. In April, 1891, in pursuance of § 9 of the act of March 27, 1890 (the general municipal incorporation act), the municipal authorities held an election for the purpose of determining whether certain territory contiguous to the former boundaries of the city should be annexed. The result was in the affirmative, and a portion of the territory so annexed now constitutes the sixth ward. Respondent was elected councilman from that ward at the regular municipal election held April 5, 1892, for the period of one year. The points of objection to his incumbency of such office are definitely stated in the fifth paragraph of the complaint, as follows:

"That the said proposed extension of the limits of said city was not submitted to or voted upon by the electors of said city as an amendment to the charter of said city, nor was the same published in two newspapers in said city for a period of thirty (30) days next preceding said election at which said proposition was submitted, nor was the election at which said proposition was submitted a general election in said city, and in no respect was the constitution of the State of Washington, relative to the submission of amendments to charters of cities of over twenty thousand (20,000) inhabitants, which had theretofore framed charters for their own government, or the charter of the said city relative to the submission of amendments, complied with in any respect; but that said proceedings, and all of them, were in strict and literal compliance of section (9) of an act of the legislature of the State of Washington, entitled 'An act providing for the organization, classification, incorporation and government of municipal corporations, and declaring an emergency;' approved March 27th, 1890."

The court below sustained a demurrer to the complaint, and judgment was entered upon the appellant's failure to plead further.

This complaint presents the question whether or not the enlargement of the territory of a city having a charter of the kind in question is or is not an amendment of its charter in contemplation of the constitutional provision above mentioned. Some question was made upon the argument whether, in view of this constitutional provision, it could be taken to have been the purpose of the legislature that the act of 1890 should apply to cities adopting charters for themselves, but, in our judgment, there can be no doubt that the intention was to make it apply to municipal corporations of every class, whether existing under special territorial charters, or under the constitution and subsequent laws of the state. The intention may have been wrongly directed, but we are satisfied that it existed, and if we were to hold the statute inapplicable the intention must be set aside as unconstitutional.

Our constitution, art. 11, § 10, provides that any city containing a population of twenty thousand inhabitants, or more, shall be permitted to frame a charter for its own government, consistent with and subject to the constitution and laws of the state. Similar provisions are contained in the constitutions of Missouri and California. Concerning this provision, we note, in the first place, that it is applicable only to a "city," that is, a municipal corporation of the class of "city," having a corporate existence under some charter, general or special, at the time when the self-framed charter is made. Having a corporate existence, it must have definite boundaries. In framing its charter it must do so with regard to boundaries as they exist. The city of Tacoma, for instance, was incorporated by act of February 4, 1886, and its boundaries were therein prescribed. Whatever its charter of 1890 might

have said with regard to the boundaries, the act of 1886 would have continued for all time to prescribe the limits of its territorial jurisdiction unless some means other than those furnished by the constitution as a method of amendment were provided for their enlargement or diminution.

Secondly, we note that the constitutional permission is to frame a charter for its *own government.* To permit the city by its own act to annex outside territory without further legislation on the subject than is contained in the constitution, would be to extend the language of that instrument, and make it read in effect that a corporation might frame a charter for its own government and the government of such additional territory as it might choose to include within its limits. Therefore the provisions of the constitution with regard to the amendment of such charters could have no force without the assistance of legislation. We conclude, therefore, that the scope of the constitutional provision goes only to the extent of providing that such cities may lay aside their existing systems of municipal regulation and control, and assume others not inconsistent with the constitution and laws of the state, which are more in accordance with their ideas of propriety and convenience, and that it has no relation to the subject of boundaries or territory. The legislature, acting upon such a view, has seen fit, by act of March 27, 1890, to provide by general law for the addition of territory to these and other municipal corporations. A general law was necessary upon this subject, because no special act, under the prohibitions contained in the constitution, could be passed upon that subject, since it would be covered by the provisions prohibiting the creation of municipal corporations by special acts.

Two cases have been cited to us, both very recent and of high authority, as precedents for our action—one from California and one from Missouri. *People v. City of Oak-*

*land,* 92 Cal. 611 (28 Pac. Rep. 807), is not exactly anal-
ogous.    Counsel frankly admit as much, but claim that
the reasons therein given are applicable to this case.    The
city of Oakland was existing under a special charter granted
in 1854.    In 1887, pursuant to the act of March 13, 1883,
a board of freeholders was appointed to prepare a new
charter in accordance with the provisions of the constitu-
tion of 1879.    This board reported its draft in March,
1888, and an election was held in November of that year,
at which the new charter was adopted.    The new charter
then went to the legislature for ratification, and was not
operative until it was approved by both houses, February
14, 1889.    But in the meantime, and in September and
October, 1888, the city and the inhabitants of outlying dis-
tricts, as they had a perfect right to do under the act of
March 13, 1883, voted to extend the city limits.    We have,
then, the people of Oakland and vicinity, on the 27th day
of October, 1888, voting to enlarge the city's limits, and
on the 6th day of November, only ten days later, voting
to propose for the ratification of the legislature a new char-
ter which definitely described the limits of the city accord-
ing to the old boundaries.    The new charter, upon its
adoption by the legislature, which under the constitution
had an absolute veto over the measure, became the law of
the case.    In the view of the court, a territory which had
been legally added in 1888 was legally cut of in 1889.    It
was held that, because under the general rule of law ap-
plying to municipal corporations, the description of its
boundaries is an essential part of the charter of such a
corporation, therefore, any change in the description of the
boundaries was necessarily an amendment of the charter,
and therefore the adoption of the new charter of 1889
resulted in cutting off the annexed territory.    It may be
that owing to the peculiar provisions of the California con-
stitution requiring the ratificat on of a charter as a whole,

and because the Oakland charter described the boundaries of the city, there would be a difference between the situation there and here; but the city of Oakland and the people of the adjacent territory would seem to have had the legal right at the time they did it to enlarge the limits of the city. Therefore, the city of Oakland, when the charter was voted upon, was the city as enlarged, and we think it may well be questioned whether the enlarged city had the power under the constitution to propose a charter for the government of any city of Oakland which did not embrace the enlarged limits. [An act designed to cover such cases was passed by the legislature of California March 19, 1889 (Acts, p. 356), and has every appearance of being intended as a general law for all cities.] But that case did not involve, nor does the decision discuss whether, now that the city of Oakland has a self-made charter, the act of March 13, 1883, § 7 (Political Code, p. 738), could be availed of by that city if it desired to extend its boundaries, as it could by any other city of the same population but organized under the general law; or whether before there could be an extension there must be a three-fifths vote, not less than two years after any preceding amendment had been proposed, and then an appeal to the legislature. We believe the supreme court of that state would hesitate before adopting such a construction, especially in view of the fact that the amendment method of annexation would give people outside no voice at all in the matter, a point which the legislature has very carefully guarded in making laws for other municipal corporations.

The case of the *City of Westport v. Kansas City*, 103 Mo. 141 (15 S. W. Rep. 68), is in point, and were we to follow the decision therein announced by one of the departments of the supreme court of Missouri, our judgment must be different. The constitution of Missouri is substantially the same as ours, and the legislature of that state,

in providing for the exercise of the power conferred upon cities of over one hundred thousand inhabitants to frame charters for their own government, enacted that any such city, after the taking effect of such charter, might extend its limits by ordinance specifying the proposed new limits, even to the extent of including therein a theretofore independently incorporated city, town or village, provided that, when the territory to be annexed included such independent city, town or village, the annexation should not be complete until four-sevenths of the voters of such city, town or village, voting at an election held for the purpose, should vote affirmatively. (Laws of Mo. 1887, p. 49.) Under this law, the people of the principal city had no vote under any circumstances, but must abide the decision of their council, and the unorganized inhabitants of outside territory were equally without voice in the annexation. Following this law, Kansas City annexed Westport, covering 285 acres, and 12,300 acres of unorganized territory besides. Stress was laid in that case upon the fact that the voters of Kansas City were not allowed a choice which they must have under the Missouri constitution to effect an amendment to the charter, because that instrument declared that amendments must be adopted by a three-fifths vote, and not otherwise. But, although the case under consideration there involved the merits growing out of a denial of the popular right to vote on the question, whereas this case involves only the technicality that the vote was had at a special instead of a general election, it is probable that the same court would hold the constitutional method of voting as binding and unchangeable by any statute. Therefore, the boundary of Kansas City cannot be changed at any time within two years of any previous amendment of its charter.

Formerly in this country no municipal corporation could have an existence without special legislative enactment

which conferred upon the inhabitants of a certain definite territory the right to be a public body corporate, with defined powers, privileges and duties. The special law of its creation was the charter of every city, town or village. A similar condition of things prevailed with regard to private corporations, the charters of which were found in special acts of the several legislatures. But the evils attending the procurement of so many special laws led many of the states, by the provisions of their new constitutions, to provide for the creation of both municipal and private corporations under general laws only. This constitutional revolution, it seems to us, made the use of the term " charter " as applied to corporations practically obsolete. In the first place, it forced the legislatures to concede to similarly situated communities the equal right to organize themselves into municipalities, where theretofore such organization was the mere privilege of legislative favor. Secondly, the general law prescribes the methods of organization, including the ascertainment of population and boundaries and the system of municipal government; but the nature of the subject compels the delegation of the power to institute a new municipal corporation, and to enlarge or reduce corporate limits to some tribunal inferior to the legislature, and whose acts are always reviewable by the courts. Such a corporation has for its organic law the general laws of the state and the decree of the inferior local authority declaring it to be duly constituted. It may be said that these taken together are its charter; but if they can be so called they furnish a good illustration of what it seems to us our constitution makers meant by the term "charter for its own government;" for the decree the law of its being, establishes the boundaries beyond the power of change by the legislature except through other general laws, the execution of which is necessarily delegated, while the statute, the law of its action or govern-

ment, is directly established by the legislature, and may be changed at any time. This law or charter for its government, it seems to us, is all that it can be held was intended by the constitution to be delegated to the cities, in either Missouri or Washington, and in California also, unless the provision for referring proposed charters to the legislature in the latter state should make a difference. While the provisions of the constitution are to be given every liberal interpretation when the accomplishment of the purpose to be attained by them is at stake, we are bound to remember that they are somewhat unusual and extraordinary provisions, and that they are indirect restrictions on the power of the legislature, which can prescribe rules for the government of every municipal corporation but these. Every state in the union has the sovereign power to enact laws for its own government, and there is always included in its laws a description of its boundaries; but the power to make its laws does not support extension of its boundaries, because its jurisdiction ceases at the state line. So when a city which is authorized to govern itself attempts to annex territory by virtue of that authority alone, it exceeds its jurisdiction and its act is void. There can be no doubt of this proposition. The city of Tacoma, in adopting its freeholders' charter, could neither exclude portions of the area covered by it under the act of 1886, nor include additional territory, because its previous boundaries were the jurisdictional limits of its existence for every purpose. If, then, the extension of its boundaries would be an amendment of its charter, here would be one amendment which it could not make; and the express provision that it may amend its charter in any particular its people see fit, is made null and inoperative. But it may be said that the legislature may authorize it to annex the territory, provided that the annexation be effected by the adoption of an amendment to its charter in the way prescribed by the

constitution, and that such annexation might be accomplished even without the consent of people in the annexed territory.   This is fully granted.   But in such case whence comes the authority to amend—from the constitution or the act of the legislature?   If from the former, how is it that it requires an act of the legislature to make this amendment operative, when every other amendment can be made without any legislation?   Plainly the whole power is conferred by the act, and the exercise of the power is not an amendment of the charter, because the legislature has no jurisdiction over amendments.   And if it is conceded further that the legislature may make the annexation depend upon the affirmative vote of people inhabiting the territory proposed to be annexed, the argument for the position we take is made stronger, since in that case the adoption of an amendment to a city charter would be made to depend upon the votes of people who are not electors in the city, when the constitution says voters on all amendments shall be electors thereof.

From these premises the next logical step is, that if the annexation of territory to cities which have adopted their own charters is necessarily an amendment of those charters, there can be no such annexation whatever under the constitution, and we should certainly be slow to reach such a conclusion.   But, in the presence of a question of so much importance, we deem ourselves fortunate in that we are not driven to any fine arguments to uphold the power of the legislature to deal with this matter since the plain letter of the constitution—"to frame a charter for its own government"—is abundant warrant for doing so.   It seems to us that the courts in Missouri and California have overlooked the considerations here mentioned, and that under these constitutional provisions annexation of territory is not to be regarded as an amendment to a city charter.

The judgment of the superior court is, therefore, affirmed.

ANDERS, C. J., and DUNBAR, SCOTT and HOYT, JJ., concur.