[No. 2254.  Decided May 29, 1896.]

THE STATE OF WASHINGTON, *on the Relation of Angelo V. Fawcett*, v. SUPERIOR COURT OF PIERCE COUNTY.

SUPERIOR COURTS — JURISDICTION OVER CITY ELECTION CONTESTS — POWER OF MUNICIPAL CORPORATIONS TO PROVIDE TRIBUNAL THEREFOR.

Jurisdiction of the superior court does not extend to a contest of the election of a city officer, in the absence of any statute providing for such contest, although by art. 4, §6, of the constitution the court is given original jurisdiction in all cases in equity and for such special cases as are not otherwise provided for, and in all cases and proceedings in which jurisdiction shall not have been by law vested exclusively in some other court.   (HOYT, C. J., dissents).

Power to provide a tribunal and clothe it with authority to contest election cases is not implied in the grant of authority by art. 11, §10, of the constitution, to cities of the first class to frame charters for their own government.   (HOYT, C. J., dissents).

*Original Application for Prohibition.*

*Thomas Carroll,* and *Hugh Farley,* for petitioner.

*Murray & Christian,* and *Stacy W. Gibbs,* for respondent.

The opinion of the court was delivered by

DUNBAR, J.—At a municipal election held in the city of Tacoma, the petitioner, Fawcett, and one Edward S. Orr were opposing candidates for mayor of said city.  The election officers of said city returned to the council, which is the canvassing board, that 5,364 legal votes were cast for mayor.  Upon the canvassing of the return by the council, it was found that petitioner, Fawcett, had received 2,683 votes and that Orr had received 2,681 votes, giving Fawcett a plurality of 2 votes.  Thereafter Orr, not being satisfied with the election, instituted a contest in the superior court of Pierce county, and sought to have the ballots

recounted.   Fawcett appeared in the action, and moved the court to dismiss, on the ground that it had no jurisdiction of the subject matter.   The motion was overruled, and Fawcett was ordered to answer the petition as filed, whereupon application was made to this court for a writ of prohibition.   The alternative writ was issued, and the cause is now here for a final determination.

The only question involved is whether a superior court, under the constitution and laws of this state, has jurisdiction to entertain a proceeding to contest the election of a city officer of a city of the first class. It is contended by the respondent that § 6 of art. 4 of the constitution, which provides, among other things, that the superior court shall have original jurisdiction in all cases in equity, and for such especial cases as are not otherwise provided for, and that it shall also have original jurisdiction in all cases and all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court, is sufficient to give the court jurisdiction in this case; but we think this contention was decided adversely to respondent's interest in the case of *Parmeter v. Bourne*, 8 Wash. 45 (35 Pac. 586, 757), and in many subsequent cases. We think the almost universal rule is that, when the legislature has acted, and has prescribed subjects of contest, such subjects are to the exclusion of others. *Jennings v. Joyce*, 116 Ill. 179 (5 N. E. 534).   To the effect that contest of the election is a judicial function only in so far as made such by special statute, see *Reynolds & Henry Const. Co. v. Police Jury of Ouachita Parish*, 44 La. An. 863 (11 South. 236).

Sec. 427 of the Gen. Stat. provides that "any elector of the proper county may contest the right of any person declared duly elected to an office to be exercised

in and for such county; and also any elector of a precinct may contest the right of any person declared duly elected to any office in and for such precinct," etc. This is all the provision the law makes for contesting election cases, and the specific provisions made in this section must, under all rules of statutory construction, be held to fall under the rule that the expression of one excludes the expression of the other, and therefore it must be concluded that there is no statutory provision for contesting the election of a municipal officer. It is claimed, however, by the appellant, that the city had the right to legislate on this subject, and to cloth the court with authority to try contested election cases, and to prescribe the mode of such trials. It is true that § 10 of art. 11 of the constitution provides that "any city containing a population of twenty thousand inhabitants, or more, shall be permitted to frame a charter for its own government, consistent with and subject to the constitution and laws of this state." And it is argued that it was the plain intention of the framers of said section to invest the inhabitants of cities containing a population of 20,000 inhabitants or more with all the authority to legislate upon local matters that had theretofore been exercised by the legislature, and that the only limitation of that power was that the same should be consistent with and subject to the constitution and laws of the state. But we must not lose sight of the elementary proposition that municipal corporations have only the powers which are specially conferred upon them by the legislature, or such other powers as by necessary implication flow therefrom. The power to provide a tribunal and clothe it with authority to contest election cases was not specially conferred by the legislature, nor do we think it was necessarily implied, or implied at all,

by the constitution, or by any act of the legislature to which our attention has been called. We think that this question has been substantially decided by this court in numerous cases. In *State, ex rel. Snell, v. Warner*, 4 Wash. 773 (31 Pac. 25), it was held that, under § 10 of art. 11 of the constitution (the same article and section now under consideration), authorizing a city of 20,000 or more inhabitants to form a charter for its own government, and provide for amendments thereto, no authority is given such city to extend its boundaries by an amendment to its charter. In the case of *Tacoma v. State*, 4 Wash. 64 (29 Pac. 847), it was held that "the grant of power to 'lay out, establish, etc., streets, alleys, avenues,' etc.," did not include an implied power to condemn lands; and that, notwithstanding the fact that the legislature had conferred upon cities organized under "freeholders' charters" the authority to appropriate private property to corporate uses, and the charter had provided ample methods for the condemnation of such property for such uses as a public street, yet such power was inoperative, in the absence of an act of the legislature conferring the right of eminent domain, and prescribing the method by which it should be exercised. It seems to us that this case goes further than is necessary to go in the case at bar to sustain the petitioner's contention that the superior court has no jurisdiction; for not only has the legislature failed to prescribe the method of contesting the election of municipal officers, but the power to contest such elections has not, by the legislature, been conferred upon any tribunal. In *Seymour v. Tacoma*, 6 Wash. 138 (32 Pac. 1077) it was held that the charter law providing registration, as provided by the general laws of the state, and the section of the charter which declared that no person shall

be entitled to vote unless he is a qualified elector under the state laws, and has registered as provided by law, was inoperative and void, for the reason that there was no state law requiring registration at elections of this character. Certainly the subject of registration for the purpose of purifying elections is more purely a municipal regulation than the empowering of courts with authority to contest elections.

The authority conferred upon superior courts, who are state officers, even conceding that the state could create a tribunal clothed with the power claimed for the court in this case, must be created by a higher authority than the local legislature of the city. The jurisdiction and duties of the superior court, and the methods prescribed by which the court shall exercise its jurisdiction, must be conferred by the constitution and by legislative authority; and this was the view this court took in *Howe v. Barto*, 12 Wash. 627 (41 Pac. 908), where, in discussing that case, the court said:

"It is claimed by the respondents that these sections prescribed a rule of evidence for state courts, and that to do so was not within the power of the city in adopting its charter, under the constitution and laws of the state. If the effect of such sections was to prescribe the manner in which a state court should transact its business, the claim of respondents would have to be sustained."

It must be conceded that, inasmuch as there is no manner prescribed by the legislature for trying contested cases in the case of municipal officers, the manner must be prescribed, if tried at all, by a municipality. Again, to show the fallacy of this proposition, if one city which has 20,000 inhabitants can create a tribunal and enact modes and methods for the trial of contested election cases, the other cities of

the same class in the state must be conceded the same
powers, and the result would be, even conceding that
the power was conferred in all cases upon the superior
judge, that a mode or method prescribed by one city
would be different from the mode and method pre-
scribed by the other cities, and there would be pre-
sented the unheard-of spectacle of one officer having
his case tried under different form, modes, methods,
and practice from those applied to another officer in
the same kind of a case in another part of the state.
We think, plainly, that the superior court had no
jurisdiction to entertain this proceeding, and the per-
manent writ of prohibition will issue as prayed for.

SCOTT and GORDON, JJ., concur.

ANDERS, J., concurs in the result.

HOYT, C. J. (*dissenting*).—In my opinion the juris-
diction of the superior court, which is challenged by
this proceeding, should have been sustained. The
legislature, in pursuance of that provision of the con-
stitution which authorized cities of more than 20,000
inhabitants to frame their own charters, specially
authorized such cities, by means of such charters, to
provide what officers should be elected, how and when
they should be elected, and how the result of the elec-
tion should be determined. This being so, it was
clearly within the power of such cities to provide that
there might be a *prima facie* determination of such re-
sult, and thereafter a conclusive determination. It
was therefore within the power of the city of Tacoma,
in its freeholders' charter, to provide that a contest
might be instituted against the one declared elected
upon a *prima facie* determination of the fact of his
election, and to provide how such contest should be
conducted.

That such a contest has been provided for is conceded
by relator, and in his brief he seems to further con-
cede the fact that if it had been provided that this
contest should be conducted before one of the officers
of the city or a board therein provided for the purpose,
the provision would have been of force. The latter
fact, if not so conceded, is so evident that it requires
no argument to establish it. If the city could pre-
scribe how the election should be held and for a *prima
facie* determination of the result before a board of
officers within the city, provided for that purpose, it
could provide for a conclusive determination by a
proceeding before a similar board. It therefore seems
clear that the city acted within its rightful authority
when it provided for a re-count and further contest to
determine the result of an election after such result
had been once determined and certified. The effect of
providing for such re-count and further contest was to
take from the first one any conclusive character which
it might otherwise have possessed. These conclusions
have not been strongly, if at all, combatted by relator,
but it is contended by him that there was no power in
the city to confer any jurisdiction upon the superior
court, and that for the reason that the re-count and fur-
ther contest were under the provisions of the charter to
be instituted and conducted in that court, the whole
provision in relation to such contest was void and of
no effect.

Under our constitution the superior court is vested
with jurisdiction in every proceeding not otherwise
provided for. In this respect our constitution is
broader than those of most of the states, and there-
under the superior court has jurisdiction of any and
every proceeding by which a right is sought to be en-
forced of which some other court has not been given

jurisdiction; and since it was competent for the city of Tacoma to provide for a re-count and to authorize it to be instituted in the interest of a defeated candidate, the superior court would have jurisdiction of such proceeding without any special provision to that effect. But the fact that there was in the charter a provision which gave the superior court jurisdiction could not take from it that which it would have had in the absence of such provision. The fact that the city had no power to confer jurisdiction upon the superior court could have no effect upon the right of the superior court to take jurisdiction by virtue of the constitutional provision; and the city having the power to give to the contestant the right to institute the proceeding, he was entitled to have such right enforced in the superior court of the county. To carry the contrary contention to its legitimate conclusion would compel a holding that no new right which might be acquired by a citizen could be enforced in a court until the legislature had by express provision clothed such court with jurisdiction of that class of rights. But new classes of rights claimed by one citizen against another are arising every day, and no one would contend that the proper superior court would not have jurisdiction to determine as to such rights because of the fact that they had arisen since any legislation in reference to jurisdiction of such courts had been enacted. If the city of Tacoma by its charter had authority to confer the right upon the defeated candidate to have a re-count, such right was one which he was entitled to have enforced, and no other forum having been provided for its enforcement, the superior court must have jurisdiction to enforce it.

But it is claimed that the subject of elections and election contests is political and not judicial. What

was said in the case of *Parmeter v. Bourne*, 8 Wash. 45
(35 Pac. 586, 757, might tend in some degree to sup-
port this claim, though even that case did not, in my
opinion, go to such an extent as to fully sustain such
claim.    But, as I understand it, this court has, in at
least two cases decided since that one was, substan-
tially modified the rule announced therein.    In *Rickey
v. Williams*, 8 Wash. 479 (36 Pac. 480), and in *Krie-
schel v. County Commissioners*, 12 Wash. 428 (41 Pac.
186), it was held that the courts had jurisdiction to in-
quire into the result of an election for the location of
a county seat, and while it is true that in one or both
of those cases some stress is placed upon the fact that
the courts must of necessity have jurisdiction to pre-
vent a violation of the constitutional provision, that
no county seat should be moved until certain formal-
ities had been complied with, yet all that was said
could only be justified upon the broad ground that
wherever a private right had been acquired the
courts had jurisdiction to entertain a proceeding for
the protection of such right.

Here the right was given to the contestant to have
a re-count of the ballots for the purpose of determin-
ing whether or not the *prima facie* determination of
the result was what it should have been, and having
this right and there being no method provided for its
protection excepting by a judicial proceeding, its de-
termination was within the jurisdiction of the superior
court.    The provision as to the contest in no manner
attempted to enlarge the jurisdiction of the superior
court.    As well might it be said that parties attempted
to enlarge or restrict the jurisdiction of such court
when they, by express contract, provided what should
be the effect of the putting in evidence of an instru-
ment executed by them.    A party having taken the

necessary steps is entitled as a matter of right to have certain evidence considered by the court, and its effect declared. The same rule will require of the courts to proceed to re-count the ballots cast at an election for the purpose of determining the result of such election, whenever by proper authority the right has been conferred upon an individual to have such result determined.

In my opinion it was by virtue of this rule that this court in the case of *Howe v. Barto*, 12 Wash. 627 (41 Pac. 908), held that it was within the power of the city of Seattle to provide the force which should be given to a tax deed issued under its authority. It was there decided that, by reason of the fact that the city had a right to levy taxes and sell the property upon which the levy was made, and issue a deed therefor, it was competent for it to provide the force which should be given to such deed, by the superior court, when put in evidence. This holding can be sustained only upon the theory that it was within the power of the city to provide how a right obtained under its charter should be enforced in the courts. It is true that it was stated in the opinion in that case that it was beyond the power of the city to have directed the method of procedure in such court, but what was thus said in no manner tends to distinguish that case from the one at bar. The right arose under the charter and its measure was defined by such charter, and it was held that the courts had jurisdiction to enforce such right. The provision under consideration similarly gave to the contestant a certain right — that of a re-count — and the course of reasoning which induced the courts to hold that they had jurisdiction in the case last cited would sustain the jurisdiction of the superior court in the case under consideration.

But even if the city had not the power to incorporate the provision in question in its charter by virtue of authority conferred by the act of the legislature, it had, in my opinion, full power so to do by virtue of the provisions of the constitution under which it was organized.   It is conceded that if the legislature had passed a charter containing the provision under consideration, it would have been of full force, and would have clothed the superior court with jurisdiction to entertain a proceeding thereunder.   But it is claimed that the freeholders' charter has not the same force that it would have had if enacted by the legislature; that the power of the city to frame such charter must be measured by the act of the legislature upon that subject, and that anything which might be included in such charter, not authorized by the act of the legislature, would be without force.

The extent of the power of cities of more than 20,-000 inhabitants in framing charters for themselves has been several times before this court.   In some of the cases that may have been said which tends to support the contention that every provision in such charters must, to be effective, be founded upon some power conferred by the act of the legislature authorizing the adoption of such charters.   In none of them, however, do I believe it to have been necessary to go to that extent to decide the questions involved, and wherever language has been used which seemed to support such contention, I have felt obliged to dissent, but have not stated my reasons for so doing, and as this has happened more than once, and the question is again involved, it is but just to the majority of the court and to myself that I should state my position upon this question.   It is that the constitutional provision, under which cities having more than 20,000

inhabitants were authorized to adopt freeholders' charters, gave to the cities which might organize thereunder the right of independent local municipal government; that under the right thus granted, these cities could provide in their charters for the exercise of every municipal power, subject only to the restrictions in the constitution and such as might be prescribed by general acts of the legislature.

The theory of the constitution makers in adopting this provision was that the inhabitants of cities of this class could best decide as to the powers which could wisely be vested in the body politic of which they were to be the constituent members; and that for that reason they should be left entirely free to adopt such charters as they chose, subject to the single provision that such charters must not conflict with the constitution itself or with the general laws of the state enacted thereunder. And the intention was to give to such cities the absolute right to legislate as to their own municipal affairs, subject only to the constitution and the general laws of the state. If such was the effect of this constitutional provision, it must follow that every provision of the charters of such cities, granting or defining a municipal power or right, must be given force unless it is found to conflict with some provision of the constitution or of a general law of the state.

That the legislature would have had power without any constitutional provision to have authorized such cities to adopt charters for themselves cannot be questioned. Hence, if any other construction is to be given to the constitutional provision than that thereby the right to frame such charters was given to such cities, the placing of it in the constitution was but an idle ceremony without any force whatever. That it

was intended by the constitution makers to have force is evident and that intention should, in my opinion, be given effect by the courts. It is not for them to determine as to whether or not this provision of the constitution was a wise one. It is sufficient for them to determine what the constitution makers intended, and that such intention was made to appear by the language used, to make it their duty to give such intention full force. I therefore feel compelled to hold that the power to enact the several provisions of the freeholders' charter is derived directly from the constitution and not from the act of the legislature.

It is possible that it was necessary for the legislature to provide some method by which it might be determined that a city had over 20,000 inhabitants, and was thus brought within the provision of the constitution, before it was authorized to act thereunder; but that being done, no further affirmative action was required on the part of the legislature. Thereafter, the legislature had nothing further to do as to the government of cities which organized under such constitutional provision, except that it might by general laws restrict the authority conferred by such constitutional provision. And it is probable that any city, without any such action on the part of the legislature, had the right to proceed under the constitutional provision subject to the risk of having its action nullified by an affirmative showing that in fact it did not have the number of inhabitants necessary to authorize it to proceed thereunder.

If it be held that the power to frame a system of local self-government is derived directly from the constitution, then it must be held that the power was thus conveyed to adopt any charter which it would have been competent for the legislature to have enacted

for such city, except as such power was restricted by the constitution itself. But few states have constitutional provisions similar to ours. It is, therefore, necessary to determine this question more as one of principle, than upon authority, and when so determined it seems clear that such a construction of the constitutional provision as will make it mean something, rather than one which takes from the provision any substantial effect, should be adopted. An examination of such authorities as there are upon the subject will tend strongly to support the construction for which I am contending. In both California and Missouri the decisions have been uniform to the effect that the constitutional' provision conferred upon the cities to which it applied full right of self-government, under which they might enact such charters as they saw fit, subject only to the general laws of the state; that by the general laws of the state their powers might be restricted, but that from the constitution itself they derived the complete power of self-government. See *State v. Field,* 99 Mo. 352 (12 S. W. 802); *People v. Hoge,* 55 Cal. 612; *St. Louis v. Western Union Tel. Co.,* 149 U. S. 465 (13 Sup. Ct. 990).

Other cases might be cited from the states of Missouri and California, but they all announce the same doctrine as those above cited, and no case from a state having such a constitutional provision can be found which tends to support a contrary doctrine. It follows that upon authority it must be held that, our constitutional provision conferred full authority upon cities of over 20,000 inhabitants to adopt their own charters.

But it is claimed that this court has in several cases announced a contrary doctrine. In my opinion, however, few if any of the cases relied upon announce principles inconsistent with the construction for which

I am contending. *In re Cloherty*, 2 Wash. 137 (27 Pac. 1064), in which it was held that it was not competent for the city of Tacoma in its freeholders' charter to provide for a municipal court, and that such court could be provided for only by an act of the legislature, is one strongly relied upon, and if there were nothing in the constitution in reference to the organization of the courts of the state, it would have to be conceded that this case announced principles not in harmony with the construction contended for. But the constitution itself provides that the courts of the state should be certain designated ones and such other inferior courts as might be provided for by the legislature. The effect of this provision was to prohibit any other body than the legislature from providing for a court. And what was said in that case, interpreted in the light of the constitutional provision as to the courts of the state, was consistent with the contention that these cities derived full power from the constitution, excepting as restricted by express provisions of the constitution itself or of general acts of the legislature.

Another one of these cases is that of *State, ex rel. Snell, v. Warner*, 4 Wash. 773 (31 Pac. 25), but in my opinion what was there held was foreign to the question under consideration. What was there decided was that a city of more than 20,000 inhabitants could not, without legislative aid, take in adjoining territory. To have held otherwise would have been not only to authorize cities of more than 20,000 inhabitants to provide for their own government, but also to provide for the government of communities outside of their limits.

Still another case is that of *Seymour v. Tacoma*, 6 Wash. 138 (32 Pac. 1077), but as I understand that

case, all that was therein decided was that the state law having provided that registration should be necessary only at elections for the election of officers, the adoption by the city of such state law did not make it necessary that voters should register before being allowed to vote in such city upon the question of the issuance of bonds.

The case which most nearly sustains the contention of the relator is that of *Tacoma v. State*, 4 Wash. 64 (29 Pac. 847), and it can be distinguished from the one at bar. What was therein held was that the city of Tacoma did not have power to condemn land for the use of the public; and this holding might be sustained upon the doctrine that the regulation of the right of eminent domain was peculiarly within the province of the legislature, and was not within the powers of a municipal corporation.

On the other hand, several cases not before referred to, though not directly in point, tend strongly to sustain the doctrine that cities of this class derive power to adopt charters directly from the constitution. See *Reeves v. Anderson*, 13 Wash. 17 (42 Pac. 625); *Scurry v. Seattle*, 8 Wash. 278 (36 Pac. 145).

The order to show cause should be vacated and the proceeding dismissed.