## CITY OF WACO et al. v. HIGGINSON.
### (No. 6261.)

(Court of Civil Appeals of Texas. Austin. Dec. 8, 1920. Rehearing Denied Jan. 19, 1921.)

1. **Municipal corporations ⬳29(2)—Extension of boundaries is "amendment and alteration of charter."**

The change of the boundaries of a city from those specified in its home rule charter so as to include additional territory is an amendment and alteration of the charter which cannot be made within two years after the adoption of charter under Const. art. 11, § 5, construing that provision either according to the meaning of its language, the construction placed thereon by the Enabling Act (Laws 1913, c. 147 [Vernon's Sayles' Ann. Civ. St. 1914, arts. 1096a–1096i]), empowering home rule cities to extend their boundaries, or in the light of the history of legislation showing that the boundaries of a city were usually fixed by its charter.

2. **Municipal corporations ⬳4—City home rule amendment construed according to popular meaning.**

The language of the home rule amendment to the Constitution was not written for lawyers and judges alone, and is to be interpreted according to its usual and popular meaning.

3. **Municipal corporations ⬳29(2)—Home rule Enabling Act does not authorize boundary extensions oftener than permitted by Constitution.**

The home rule Enabling Act (Laws 1913, c. 147 [Vernon's Sayles' Ann. Civ. St. 1914, arts. 1096a–1096i]), empowering home rule cities to extend their boundaries, is merely a legislative construction of the home rule amendment to the Constitution as empowering the cities to fix their boundaries in their charters, and was not intended to, nor could it, empower the cities to change their boundaries more frequently than they were permitted to amend their charters by the constitutional amendment.

4. **Constitutional law ⬳48—Statute construed to avoid unconstitutionality.**

The construction of a statute which would bring it in conflict with the Constitution is to be avoided, if possible, because it is presumed the Legislature did not intend to violate the Constitution.

5. **Municipal corporations ⬳29(2)—Charter amendment directed by contemporary resolution cannot be made within two years.**

Under Const. art. 11, § 5, authorizing cities to adopt their own charters, but prohibiting amendments thereof oftener than every two years, a city cannot amend its charter by changing its boundaries within two years after the adoption of the charter, though at the election at which the charter was adopted the voters also ratified a resolution directing a city to make the boundary change.

6. **Appeal and error ⬳839(1)—Appellant cannot rely on failure to prove issue on which evidence was excluded.**

An appellant city cannot seek to overthrow an injunction restraining collection of taxes on lands newly incorporated therein on the ground that the landowner failed to prove that his lands were agricultural, where the trial court excluded evidence as to the character of the lands and granted the injunction because the charter amendment extending the city boundaries was unconstitutional.

7. **Municipal corporations ⬳979—Collection of taxes on lands unlawfully included can be restrained.**

The owner of lands incorporated into a city by a charter amendment which was unconstitutional is entitled to injunction restraining the collection of city taxes on his lands; the right to question the validity of the amendment not being vested exclusively in the state, which would result in the landowner's money being taken from him illegally and without redress.

8. **Municipal corporations ⬳29(1)—Legislature cannot validate charter amendment void under Constitution.**

The act of the Legislature in 1918 (Laws 1918, c. 68) undertaking to validate the adoption of home rule charters by cities cannot validate an amendment to one of those charters extending the boundaries of the city which was unconstitutional.

Appeal from District Court, McLennan County; E. J. Clark, Judge.

Suit by C. H. Higginson against the City of Waco and others. Judgment for plaintiff, and defendants appeal. Affirmed.

E. C. Street and Sleeper, Boynton & Kendall, all of Waco, for appellants.

O. L. Stribling, of Waco, for appellee.

BRADY, J. The appellee instituted this suit in the district court of the Nineteenth judicial district in McLennan county, Tex., against the appellants, city of Waco and its tax assessor and collector, to enjoin and restrain appellants from the collection of taxes assessed and levied by the appellants against the lands of the appellee as described in his original petition for the reason that such lands were not within the corporate limits of the city of Waco, and not subject to assessment for taxes by the city of Waco. The grounds alleged by appellee for the relief prayed for are in substance:

(1) That for a long time prior to December 29, 1913, the city of Waco was a municipal corporation as a city of over 10,000 inhabitants, created and organized under a special act of the Legislature granting a charter to said city, in which such charter the territory and limits defining and designating the city of Waco were particularly described and established.

(2) That on the 29th day of December, 1913, at an election held for that purpose, the inhabitants of the city of Waco, as it then existed, adopted a new charter which had been prepared by a charter committee, selected in pursuance of the action of a mass

meeting of the citizens of the city of Waco held for that purpose.

(3) That article 1 of the new charter so adopted defines by metes and bounds the territory constituting the city of Waco, which is the same territory that constituted the city under the old charter.

(4) That the city was duly organized under the charter adopted December 29, 1913, by an election of city commissioner and other officer provided for in that charter.

(5) That the lands of the appellee described in his petition were not on the 29th day of December, 1913, within the city limits of the city of Waco, as defined in article 1 of the new charter adopted December 29, 1913.

(6) That after the adoption of the new charter on December 29, 1913, the board of commissioners of the city determined to amend the charter as adopted by changing the territorial limits and boundaries as designated in article 1 of the new charter, and passed an ordinance enlarging and extending the city limits, and called an election to be held within the territory therein described for the purpose of having qualified voters therein to determine whether or not the charter of the city should be so amended, which election was held on April 7, 1914, at which election there was submitted to the qualified voters of the city of Waco as defined in its new charter as well as said territory to be added the proposition as to whether or not "all that district of country within the following limits should hereby be created into a city to be known and styled as the city of Waco, in the county of McLennan" (setting up by metes and bounds the new territorial limits, which included all the old territorial limits and an extension of the same in certain directions); that the land of the appellee was included in the new territorial limits as defined.

(7) That at an election held on April 7, 1914, the amendment of the city charter was adopted, and the city commissioners thereafter passed an ordinance defining the boundaries of the city of Waco, and declaring that the territory therein should thereafter be and constitute the city of Waco.

(8) That thereafter the land of appellee was listed for taxes for the year 1915 by the city assessor and collector after the appellee had refused to render same for taxes.

(9) That thereafter the city of Waco, through its assessor and collector, assessed taxes against appellee's land so described for the year 1915 amounting in the aggregate to the sum of $1,700.42, which amount at the time of filing this suit the city was undertaking to collect and enforce its lien against said land.

That the adoption of the amendment of the charter of the city of Waco at an election held on April 7, 1914, was without authority of law and in violation of article 11, § 5, of the state Constitution and the statutes enacted under this constitutional provision, in that the amendment was adopted at a period of less than two years after the new charter had been adopted on December 29, 1913, under article 11, § 5, of the Constitution. That the changing and enlarging of the territorial limits of the city constituted an alteration and amendment of the charter as adopted on December 29, 1913, and such amendment was void, and appellee's lands are not subject to taxation by the city of Waco.

That the lands of appellee described in the petition were on the 7th day of April, 1914, exclusively farm lands and only suitable for agricultural purposes, and were at that time and at the time of filing suit being used by appellee for farming purposes; that said land was not adjoining the limits of the city of Waco as established in the charter adopted December 29, 1913. That such land had not been laid off in city lots and blocks and was not being offered by the appellee as city property; that there is situated between the said tract of land and the original limits of the city of Waco other farming lands used exclusively for farming purposes; that in attempting to place said tract of land within the corporate limits of the city of Waco the board of commissioners acted arbitrarily, and not in the proper exercise of the power given to them to submit to the qualified voters the question as to whether or not said land should be included within the city limits.

That the assessed valuation of said land is unreasonable and unjust and imposes an unequal burden of taxation on appellee's land in comparison to burden placed upon other agricultural lands contiguous thereto and not included in the limits of the city of Waco. That said tract of land is not occupied by people engaged in pursuits in the city of Waco, and is not logically any part of the city of Waco.

Defendants answered: First, by exceptions; second, general denial; third, that prior to the adoption of the charter of the city of Waco a charter committee was appointed to frame a charter to be submitted to a vote of the inhabitants of the city, under the constitutional provisions of article 11, § 5, and the Enabling Act of the Legislature, which made its report of a proposed charter to the city commissioners, and along with the report presented a resolution, to be submitted to the voters at the same time with the charter, providing for extension of the city limits so as to include the lands of plaintiff, and which resolution provided that in case it carried the city commissioners should order an election under the provisions of section 20 of the charter for annexation of new territory. Both the proposed charter and the resolution were submitted to a vote of the people and both were duly adopted. The first section of the new charter set

out the limits of the city of Waco the same as under the former charter, which did not include plaintiff's land, but in said section it was provided that the limits should be the same as those in the former charter until the boundaries should be extended as provided in the resolution submitted and voted on with the new charter. After adoption of the new charter and said resolution the city commissioners passed an ordinance ordering an election to be held in conformity to the charter and resolution for extending the boundaries, pursuant to which an election was held on the 7th day of April, 1914, and said ordinance extending the city limits so as to include plaintiff's property was adopted by a majority vote. That the effect of the provision in section 1 of the new charter fixing the city limits was to constitute the old city limits as defined in section 1 the city limits until the new city limits could be established in the manner provided in said resolution, and when said limits were so established by the very terms of the charter the old limits ceased to exist, and thereafter the limits of the city of Waco were established as provided in said resolution and in the charter, and there was no alteration or amendment of the charter, but the establishment of the new·limits were provided for in the charter itself to come into existence upon the contingencies provided for in the charter, all of which happened as alleged. That immediately after the new city limits were established and brought into existence by operation of the charter the city of Waco assumed jurisdiction throughout the extent of the entire new city limits and exercised municipal control over the same, and the inhabitants thereof enjoyed the privileges and benefits of municipal government, and the children in the new limits attended the public schools of the city, and large sums of money were spent by the city in the new territory, and that, if the procedure by which the lands of plaintiff were taken into ·the city was irregular or illegal, no person except the state could take advantage thereof, and that the Legislature of the state had passed laws validating the extension of the boundaries of the city of Waco so as to include the lands of the plaintiff.

The case was tried before the court without a jury, and the court held that the proceedings whereby it was sought to annex the lands of the plaintiff to the city of Waco were void for the reason that the effect was to amend the charter of the city of Waco within two years after the adoption of the charter, which was forbidden by article 11, § 5, of the Constitution, and the court gave judgment for the plaintiff to the effect that the lands of plaintiff were not subject to assessment and taxation by the city of Waco, and perpetuating the temporary injunction granted in the suit, and perpetually enjoining the city of Waco and its tax collector from the collection of taxes assessed against the lands of plaintiff described in ·his petition.

Defendants made a motion for a new trial, which was overruled, to which defendants excepted and gave notice of appeal.

The above statement is taken in part from appellants' brief and in part from that of appellee, and is believed to fully outline the issues made by the pleadings. It is a sufficient statement of our conclusions of fact to say that there was evidence supporting the material issues, except that the trial court refused to admit testimony upon the issue that the city had attempted to extend its boundaries so· as to ·include plaintiff's lands, not used for city purposes, but for agricultural purposes, and not adjacent to the city. The case was tried upon an agreed statement of facts.

### Opinion.

Appellants assail the judgment of the trial court upon the following grounds:

"First. Because the proceedings whereby plaintiff's lands were brought within the city limits of the city of Waco were authorized by the Legislature through the Enabling Act, and the city was not authorized by article 11, § 5, of the Constitution to extend its boundaries, and the provision of the Constitution that no city charter should be altered, amended, or repealed oftener than once every two years does not apply to annexation of new territory.

"Second. That the adoption of the ordinance at the election held on the 29th day of December, 1913, the same time that the charter was adopted, constituted an extension of the city limits by vote of the inhabitants, to take effect when reaffirmed by the election held April 7, 1914, pursuant to the provisions of articles of the charter relating to the annexation of new territory.

"Third. Because there was no proof whatsoever offered in support of the allegations to the effect that plaintiff's lands were exclusively agricultural, and not adjoining the city.

"Fourth. That if, under the constitutional amendment, the power was conferred upon the inhabitants of the city by majority vote to annex new territory, then the proceedings were not void so as to make the same subject to collateral attack by plaintiff, but such attack could only be made in a direct proceeding by the state, and the action of the Legislature validated the proceedings."

We will consider and discuss these questions in the order stated.

In 1912 the people adopted section 5, art. 11, of the Constitution. This section, so far as pertinent to the questions· involved here, reads as follows:

"Cities having more than five thousand (5,000) inhabitants may, by a majority vote of the qualified voters of said city, at an election held for that purpose, adopt or amend their charters, subject to such limitations as may be prescribed by the Legislature, and providing that no charter or any ordinance passed under

said charter shall contain any provision inconsistent with the Constitution of the state, or of the general laws enacted by the Legislature of this state: * * * And provided further, that no city charter shall be altered, amended or repealed oftener than every two years."

At the regular session of the Thirty-Third Legislature there was enacted chapter 147, Acts of 1913 (Vernon's Sayles' Ann. Civ. St. 1914, arts. 1096a–1096i), popularly known as the Enabling Act, designed to put into effect the above constitutional provision. The first section of this act is a copy of the constitutional provision. The method of adopting such charters or amending existing charters by cities of the class mentioned is provided for, and certain special enumerated powers are set forth in the act. Among these powers is the following:

"The power to fix the boundary limits of said city, to provide for the extension of said boundary limits and the annexation of additional territory lying adjacent to said city, according to such rules as may be provided by said charter." Section 4 (article 1096d).

It is expressly provided, however, that the enumeration of such powers shall not preclude any such city from exercising the powers incident to the enjoyment of local self-government, provided they shall not be inhibited by the Constitution of the state. It is also prescribed that all former powers granted to such city by a general or special charter are preserved, when embraced in and made a part of the charter adopted.

The city of Waco, at the time the Enabling Act was passed, had a special charter, and in December, 1913, adopted the present charter, under the provisions of section 5, art. 11, of the Constitution and of such Enabling Act. In this charter, the old boundaries of the city were again fixed, but it was provided in the same section that a resolution was to be submitted to the voters at the same time as the charter, providing for extension of the city limits, which enlargement of the territory would include the lands of the plaintiff, and that, if such resolution carried, an ordinance should be passed by the city commissioners ordering an election to extend the boundaries. The resolution was adopted at the same time as the charter, and the ordinance was passed; and at an election held April 7, 1914, the ordinance was adopted by a majority vote of the people.

[1] The first question presented for our decision is whether the action of the people of Waco in adopting a change of boundaries by the election of April, 1914, constituted an alteration or amendment of the charter. If it did, then it was clearly inhibited by the last proviso of section 5, art. 11, of the Constitution, which provides that no such charter shall be altered, amended, or repealed oftener than once every two years.

Upon this question there appears to be a regrettable conflict of authority. Counsel for the city cite two Texas cases, Short v. Gouger, 130 S. W. 267, and Cohen v. City of Houston, 205 S. W. 757. Neither of these cases is believed to be authority upon the question under discussion. In Short v. Gouger it was merely held that, there having been no legislative authority for enlarging the territory of a town of a certain class previous to an act of the Legislature passed in 1903, the attempted annexation of territory by such a town was invalid, and did not affect the pre-existing boundary. The court recognized the doctrine that the term "municipal corporation" implies the organization of a certain geographical district, under authority of law, and that it includes within its jurisdiction and control a certain geographical area, which territory may be enlarged or reduced by legislative authority, being a matter solely within the discretion of the Legislature, except as restrained by the Constitution.

In Cohen v. City of Houston the only related question was the effect of an amendment to the charter of the city of Houston extending its boundaries and annexing additional territory. It was held that the Enabling Act, under the home rule amendment, superseded a former article of the Revised Statutes, and constituted a general law. The city of Houston having proceeded in accordance with the Enabling Act, it was merely held that this was itself a general law; and therefore the extension of the boundaries by the amendment to the charter was not inconsistent with a general law enacted by the Legislature. The question of enlargement of boundaries oftener than two years by alteration or amendment of the home rule charter was not involved in the decision.

Authorities from other jurisdictions are cited in appellants' brief, of which State ex rel. Snell v. Warner, 4 Wash. 773, 31 Pac. 25, 17 L. R. A. 263, and Torian v. Shayot, 47 La. Ann. 589, 17 South. 203, are most nearly in point. The substance of the decision of the Supreme Court of Washington in State v. Warner, under a somewhat similar constitutional section, is found in this statement by the court:

"We conclude, therefore, that the scope of the constitutional provision goes only to the extent of providing that such cities may lay aside their existing systems of municipal regulation and control, and assume others not inconsistent with the Constitution and laws of the state, which are more in accordance with their ideas of propriety and convenience, and that it has no relation to the subject of boundaries or territory."

It has occurred to us that perhaps this case may be distinguished from the instant case upon the ground that the question there involved was merely whether the grant of power by the Constitution, in general terms similar to our own Constitution, extended to the

matter of boundaries, or territory, or whether that question was relegated to the Legislature, and that the decision did not embrace the question whether a change of boundaries would constitute an alteration or amendment of a charter. However, for the purposes of this decision, we shall treat State v. Warner as in point.

In Torian v. Shayot the Supreme Court of Louisiana had before it the question whether a city had the power to extend its limits, under a statute authorizing it to alter, change, or amend its charter. The court held that it had no such power, saying that:

"The act which is relied upon as conferring such authority, prescribes 'the manner of altering, changing or amending the charter.' It says nothing, in terms as to the right of extending the boundaries, and the authority to broaden the limits of the town was not granted, unless it be found in the words 'altering, changing or amending the charter.'"

Following State v. Warner, the court held that these words did not embrace the authority to effect a change in boundaries. In principle we find it difficult to distinguish the decision in that case from the instant case.

Upon the other side the following adjudicated cases are cited: City of Westport v. Kansas City, 103 Mo. 141, 15 S. W. 68; Kansas City v. Stegmiller, 151 Mo. 189, 52 S. W. 723; Gray v. Crockett, 30 Kan. 138, 1 Pac. 50; and also 19 R. C. L. § 2, and 28 Cyc. 180. To these may be added People v. Oakland, 92 Cal. 611, 28 Pac. 807. Of these adjudications, the most nearly in point are City of Westport v. Kansas City and People v. Oakland, and perhaps Gray v. Crockett.

The former case involved the construction of a provision of the Constitution of Missouri which authorizes cities having a population of 100,000 to frame charters for their own government, and to become effective when approved by four-fifths of the qualified voters. The Constitution further provided that a charter "so adopted, may be amended by a proposal therefor made by the lawmaking authorities of such city * * * and accepted by three-fifths of the qualified voters of said city * * * and not otherwise." The question for decision was whether or not an extension of the city limits was an amendment to the charter, and whether or not such an amendment could be made without submitting the same to a vote of the people. The court said:

"The freeholders in framing the proposed charter, and the voters, in adopting it, did, by the second section thereof, fix and define the territorial limits of the municipality, and that section is as much a part of the charter as any other section therein contained. This section, defining the limits of Kansas City, is made a part of the charter, and the question whether it might or might not have been omitted is foreign to the present inquiry."

The court then quoted with approval from Gray v. Crockett, 30 Kan. 138, 145, 1 Pac. 50, 55, as follows:

"The boundaries of the city of Wyandotte are defined by its original act of incorporation, and any changes in those boundaries must necessarily contract or enlarge the sphere of its municipal jurisdiction, and therefore constitute so far an amendment of its charter."

The Missouri court then concludes its discussion of this question with this statement:

"It is too plain to admit of any doubt that any act on the part of Kansas City which contracts or expands its territorial jurisdiction is an amendment of its charter. Indeed, the ordinance in question seeks to make an amendment of grave importance; for, if valid, Kansas City becomes liable for the debts of Westport, must furnish adequate police protection for the * * * added territory, and is followed by a train of outlays too numerous to be mentioned. The conclusion cannot be escaped that the ordinance in question, extending the limits, is an amendment of the charter, and an amendment, too, within the purview of said section 16 of article 9 of the Constitution."

We shall not undertake to review the other authorities cited, but sufficient has been stated to show the apparent conflict of authority in other states. In this situation, and especially as we have been cited to and have found no decision by our Supreme Court upon the question, we feel free to place our own interpretation upon the meaning and effect of our Constitution. The reasoning of the Supreme Court of Missouri in Westport v. Kansas City, supra, commends itself to us as sound, although we do not think the conclusion is as manifest as stated by the court there. Indeed, we confess to have had great difficulty in deciding the matter.

[2] In adopting the home rule amendment to our Constitution, the people expressly declared that no such charter should be altered, amended, or repealed oftener than once every two years. This language was not written for lawyers and judges alone, and to be made the subject of refined and subtle meanings, but was to be interpreted according to its usual and popular meaning. To the ordinary man it would seem plain that when the boundaries of a city are fixed in a charter, as was done in adopting the charter of Waco, to subsequently effect a substantial change in those boundaries would be to both alter and amend that charter. The city could not operate as a municipality and exercise its jurisdiction and control except over definitely established territory; and to change that territory and extend the sphere of local self-government would seem to effect as important a change as upon any other subject embraced within charter provisions. These considerations were generally indicated by the Supreme Court of Missouri in Westport v. Kansas City.

[3, 4] The Legislature, too, in adopting the Enabling Act, has placed a legislative construction upon this constitutional provision. It has expressly enumerated, as one of the powers granted to cities to frame their own charters, the power of fixing boundaries and also of changing the same, "according to such rules as may be. provided by said char-.ter." The Constitution authorizes the adoption of home rule charters, subject to such limitations as may be prescribed by the Legislature; and that body has, in substance, declared that the fixing and changing of boundaries shall be prescribed in the charter. We think that it cannot be successfully maintained that the Legislature intended to authorize such a charter to contain any provision that the boundaries might be enlarged oftener than once in every two years. If it did, such provision would be in conflict with the Constitution, and such a construction is to be avoided, if possible, because it will be presumed that the Legislature did not intend to violate the Constitution. Indeed, if the legislative enactment is to be construed as to permit a city to amend its charter by enlarging boundaries at such periods as are prohibited by the Constitution, it would fall for repugnancy with the Constitution, as much so as if the provision had been contained in the charter itself, and action were taken by the city, without legislative direction. The restraint of the Constitution is as effective upon the Legislature as upon the municipality.

Not only has the Legislature recognized the propriety of placing in home rule charters a provision fixing the original boundaries, and providing for change in same, but it is to be presumed that the people, in adopting the constitutional amendment, had the common knowledge that, under the history of our legislation, the manner of fixing the. boundaries was not only an appropriate subject for charter provision, but was the usual thing. For a long period of time prior to the adoption of such constitutional provision cities, operating under special charters granted by the Legislature almost invariably, if not entirely so, had provisions in the charters fixing their territory and providing for changes. Those incorporated under general laws, which became for such class of cities their charters, in the formal acts of accepting incorporation made their boundaries a matter of record, and general laws provided for changes in territory.

With these considerations in mind, it seems difficult to escape the conclusion that the people intended that any change in the boundaries of a city would. be as much an alteration or amendment of the charter as any other subject contained therein. Therefore we conclude that the change in boundaries effected by the election of April, 1914, by the people of Waco constituted an alteration and amendment of their charter, and, having occurred within two years after the adoption of the charter, was expressly inhibited by the Constitution.

[5] The next question presented is whether the inclusion in the proposal for a new charter of a resolution providing for a change in the boundaries fixed in the charter, at an election to be held immediately thereafter, constituted a part of the original charter, and did not result in an alteration or amendment of the charter. The argument that the adoption of the new charter and such resolution, and . the approval of the change in boundaries by the people at an election provided for in the resolution, fixed the changed territory as a part of the original charter itself, because it was but the happening of a contingency provided for in such charter, has some plausibility. However, we think the argument is fallacious, and its unsoundness, may, perhaps, be demonstrated by one hypothetical instance, not in the least drawn from an extreme. Let us suppose that the city, having provided in the charter for the commission form of government, had also provided that this form should exist for a period of one year, and then an election should be held to determine whether a change to the aldermanic form should be made, and that upon a majority vote a change to the new form of government would result. Could it be successfully contended that, when an election was held and the new form of government adopted, the change would by relation be made effective as of the date of the original charter? This is in substance the contention. We think, obviously, the question must be answered in the negative. The result of the attempt, if such it were, in respect to a change in the boundaries, would be precisely the same as if provision for enlarging the territory, after fixing the original boundaries, had been made by a separate section in the charter. The Constitution forbids any alteration or amendment oftener than every two years, and any attempt to evade this provision of the Constitution by indirection, although not intended, would be as ineffectual as a direct attempt.

[6] The third question affords appellant no ground for complaint, for the simple reason that the trial court refused even to hear any evidence in support of the plaintiff's allegations that his lands were exclusively agricultural, and not adjacent to the city; and the judgment was not based upon any such claim for relief.

At this juncture we may add that it is not necessary for us to decide the appellee's cross-assignments of error, based upon the exclusion by the trial court of such testimony. These cross-assignments are urged in the event the court should hold that the judgment is erroneous and should reverse the case. Having concluded to uphold the judgment of the trial court, and to affirm the case, it becomes immaterial to decide the merits of the cross-assignments.

226 S.W.—69

[7] The next question for consideration is the claim of the city that appellee is not entitled to the remedy of injunction, in any event, because this is a proceeding which constitutes a collateral attack upon the corporate existence of the city, and complains of proceedings which are not void, but merely an irregularity. The contention is that only the state, in a direct proceeding, may. complain of the act of the city in extending its boundaries. We will not attempt to review the authorities cited in support of the proposition under the assignment raising this question. They are each thought by us to be distinguishable from the present case on the facts and upon the substance of the subject-matter of the suits. If the contention should be sustained, it would be clear that appellee would be wholly without remedy, because in any form of action or defense he would be met with the same objection, whether in an effort to resist the collection of taxes by suit or otherwise. This, too, even upon the assumption that his property had been illegally taken into the city limits and subjected to taxation, in plain violation of a constitutional right. We cannot agree that a citizen is thus left without remedy, and think that the following cases afford ample authority for the proposition that in this case appellee has not merely attacked the corporate existence of the city of Waco, but his suit is directed against the power of the city to lay burdens on his property and subject it to the payment of taxes, under an exercise of authority absolutely void under the Constitution. Lum v. City of Bowie (Sup.) 18 S. W. 142; Parks v. West, 102 Tex. 11, 111 S. W. 726; Crabb v. Celeste Independent School District, 105 Tex. 194, 146 S. W. 528, 39 L. R. A. (N. S.) 601, Ann. Cas. 1915B, 1146.

[8] There only remains to decide the question whether the validating act of the Legislature, passed in 1918 (Laws 1918, c. 68), undertaking to validate in all respects the adoption of home rule charters by certain cities, including Waco, had the effect of rendering valid the action of the city in taking in the new territory. It is a complete answer, in our opinion, to this contention that, if we are right in holding that the election of April, 1914, and the result thereof, constituted an alteration and amendment of the charter of Waco within two years from its adoption, and was in violation of the Constitution, it inevitably follows that the Legislature was without power to make the void proceedings valid. The power of the Legislature was, by this provision of the Constitution, restricted to the placing of proper limitations upon the exercise of the power to adopt, amend, or repeal charters by the cities, and it was restrained from attempting to grant authority in conflict with the Constitution. In the following cases it was decided that the power of cities in the adoption of their own charters does not proceed from the Legislature, but directly from the people themselves: Le Gois v. State, 80 Tex. Cr. R. 356, 190 S. W. 724; Xydias Amusement Co. v. City of Houston (Civ. App.) 185 S. W. 415. Whether this be true or not, the Legislature was without authority to validate any proceeding which by the Constitution was rendered void.

Believing the case has been correctly decided, and that no reversible error has been shown, the judgment is affirmed.

Affirmed.

⬡⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes