M. M. WHEELER, COMPLAINANT, APPELLEE, v. WALTER J. BRYSON COMPANY et al., DEFENDANTS, APPELLANTS.

(*Nashville*, December Term, 1930.)

Opinion filed February 21, 1931.

A. G. Ewing, for complainant, appellee.

J. Washington Moore, Richard P. Dews, Jack Keefe, Thomas G. Kittrell and Richard Gleaves, for defendants, appellants.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

This bill was filed to reach by attachment and garnishment on the City of Nashville funds owing by the City to the defendant Bryson Company, a non-resident corporation. The justness of complainant's debt against Bryson Company is not questioned, and a decree *pro confesso* was permitted to be taken as to it. However, the City demurred on the ground that a municipal corporation is not subject to garnishment, except insofar as expressly authorized by Chap. 29, Acts of 1921, which, it is said, must be limited in application to "officers and employees," and that Bryson Company, a contracting corporation, is not within this classification.

The Chancellor overruled the demurrer, holding (1) that the passage of the Act of 1921 indicated a purpose on the part of the Legislature to abrogate broadly the rule based on public policy which exempted municipal corporations from garnishment, and (2) that a fair construction of the term "employee" used in the Act authorizes an extension of its meaning to any person or corporation engaged or employed to do work for the City. And, in response to the insistence that an independent contractor may not be so embraced, holds that the bill does not state a case of independent contractor, but merely of one who had done work for the City under contract, a situation not necessarily establishing or implying an independent contractual relationship, the presumption being otherwise, citing cases, among others, *Sledge* v. *Hunt,* 157 Tenn., 610, holding that "there is a presumption that one performing work and labor for another is an employee of such other and the burden is upon the latter" to establish the independent relationship. The City has appealed.

■ There is plausible ground for the view that the Legislature used the term employee in its broad, rather than in its restricted sense. It is said in Bouvier's Law Dictionary that the term employee is one "of rather broad signification for one who is employed;" that "it may be anyone who renders service to another; *Watson* v. *Mfg. Co.*, 30 N. J. Equity 588;" and he cites *Moore* v. *Heaney*, 14 Md., 558, as holding that one who received five per cent of the cost for superintending the erection of a warehouse was an employee.

Analysis of the reason underlying the rule exempting municipalities from garnishment fails to disclose any possible ground for assuming an intention to restrict application of the Act of 1921 to employees by the day or week or year, working on a salary or per diem basis. The public policy involved, rested chiefly on probable interference and embarrassment in the performance of duties in which the public are concerned, has equal application whether the debtor is a fixed salary employee, or one paid according to the amount of work done; whether a stenographer, clerk or policeman with fixed wages, or a street cleaner covering a certain area, or a sewer builder compensated by the job. Moreover, to narrow and restrict the application of the Act to certain classes of employees, would give rise to hair splitting litigation, to determine in any given case whether or not the City must respond; whether or not the debtor was technically an independent contractor. It is well known that this is oftentimes a difficult and delicate question, determinable only on the peculiar facts of each case.

■ However, whether or not the term "employee" used in the Act may be fairly treated as including the defendant contracting corporation, we are persuaded

that the Chancellor was justified in construing the passage of the act as indicative of legislative. intention to abrogate broadly the rule extending exemption from garnishment to municipal corporations, having in mind changed modern conditions, and the rights of creditors to enforce payment of their just debts. What possible reason is there for concluding that the Legislature intended by the Act of 1921 to abrogate the rule of exemption as to municipalities and counties in all those cases which usually, commonly and frequently arise, and leave it in force only as to the rare cases of which the one before us is an illustration? In practice such claims are confined almost altogether to the classification, "officers and employees," conceded to be covered by the Act. Tennessee cases dealing with the question, relied on in support of the rule, practically all come within this classification, such as: *Bank* v. *Dibrell,* 3 Sneed, 379; *Memphis* v. *Laski,* 9 Heisk., 511; *Oliver* v. *Athey,* 79 Tenn., 149; and the more recent case of *Dickens* v. *Bransford Realty Co.,* 141 Tenn., 389, wherein the immunity was extended to a corporate agency of a government other than that of this State.

In *Mitchell* v. *Miller,* 95 Minn., 62, the Court recognized that the immunity rule had been enforced in Minnesota and said that in the absence of legislative expression the Court would feel constrained, following previous decisions, to apply the rule to a case of indebtedness in which no fees or salaries of public officers were involved. But the Court took cognizance of the recent passage by the legislature of an act exprssly providing that the salaries and wages of officers and employees should be subject to garnishment, attachment and execution; and the Court held that by this action "the legislature declared so sweepingly against the rule of public policy

with reference to employees of public corporations that it is difficult, upon any sound basis of reasoning, to sustain the doctrine in any respect." And the Court said further: "In thus deliberately making so radical a change in the law which had become so well settled, we must assume that the legislature acted advisedly, and intended to strike at the very root of the doctrine." And in *Portsmouth Gas Co.* v. *Sanford,* 97 Va., 124, 33 S. E., 516; 45 L. R. A. 246; 75 Am. St. Rep. 781, the Supreme Court of Virginia gives like effect to a similar act of the legislature of Virginia. In that case the Court calls attention to another rule of public policy, "that is, that the State owes it to its own citizens to provide appropriate remedies by which home creditors may subject the assets or effects of nonresident debtors to the payment of their debts." This has direct application here.

In *Covender* v. *Hewitt,* 145 Tenn., 471, sustaining the constitutionality of the Act of 1921, the Court quotes from 6 R. C. L., Section 108, and approves the following: "In order to ascertain the public policy of a State in respect to any matter, the acts of the legislative department should be looked to, because a legislative act, if constitutional, declares in terms the policy of the State."

In yet another aspect, independently of any effect to be given the passage of the Act of 1921, the rule of public policy exempting municipalities from garnishment must be held to be without application to the instant case. The bill as amended shows that prior to its filing this foreign corporation had completed the work done by it for the City, had executed an indemnity bond as required by law insuring faithful performance and had withdrawn its officers and agents and tangible property from the State. Now the rule exempting municipalities from gar-

nishment rests mainly on the interference with the performance of obligations and discharge of duties by these municipalities which are for the benefit and in the interest of the public. For example, as said in *Memphis* v. *Laski,* 9 Heisk., 511, the public weal would be imperiled and the enterprises of the corporation "paralyzed by the seizure and sequestration of the wages upon which the contractor and employees depend for the performance of their contracts." So here, if the City sewers were yet in course of construction, the seizure by garnishment of the contractor's funds might prove an embarrassment to the public. But, the reason of the rule largely fails when it appears, as it does, that the work has been fully completed and the contractor has removed from the State. This distinction is definitely recognized by Mr. Justice BEARD, in *Baird* v. *Rogers,* 95 Tenn., 492, wherein a judgment of Rogers against the town of Jellico was sought to be subjected by proceedings brought by a creditor. The claim of Rogers was for certain fees which had accrued to him as Recorder of the Municipality. In sustaining the right of the creditor to reach the fund in the hands of the municipality, the Court approved *Bank* v. *Dibrell,* 3 Sneed, 379, and quoting in part from that case said: " 'It would be embarrassing generally, and, under some circumstances, might prove fatal to the public service, to allow the means of support of the servants of the government' to be diverted by creditors, through the process of attachment or execution, from their legitimate object. This consideration would induce the Courts to put in operation this rule of exemption, whether invoked by the municipal master or its servant. . . . But," the Court proceeded, "Rogers is no longer an employee of the town of Jellico. His official connection with it had

been determined long prior to the filing of the complainant's bill. The efficiency of corporate service no longer depends upon the security of fees or emoluments from the reach of creditors.'' Other distinguishing grounds were mentioned, among these that Rogers' claim having taken the form of a judgment debt against the town, he was ''no longer a claimant of fees earned by him as Recorder;'' that ''he stands now on the same level with creditors of the corporation whose judgments rest on general indebtedness.'' But, while noting these matters and further that the corporation was not raising the question, it is clear that the Court recognized as largely controlling the fact that the time had passed when the ''efficiency of the corporate service'' would be affected by the subjection of the funds in its hands.

So, in *City of Laredo* v. *Nalle,* 65 Texas, 359, Chief Justice WILLIE, discussing this doctrine of immunity, says:

''Public policy may demand that a fund set apart for erecting a public building, should not be taken for the debt of the person contracting to do the work during the progress of its construction, for this may prevent its completion. But when the work is finished and the money earned, and standing to the credit of the contractor with the city, it should be subject like any other property to the payment of his debts. No one should be allowed to place his property beyond the reach of his creditors by keeping it in the possession of a municipal corporation.''

And, referring again to *Portsmouth Gas Co.* v. *Sanford, supra,* it is to be noted in this connection that that Court said:

''Upon the facts of this case little inconvenience and no prejudice can result to the city of Portsmouth by hold-

ing it liable to garnishment. The work undertaken by the defendants for the city has been completed. The city has retained, upon notice of the plaintiff's claim, a sum sufficient to meet its demand."

In the case at bar it appears that the City is protected by an indemnity bond and that the City has no interest in a further retention of the fund.

Certainly, in view of the passage of the Act of 1921, directly declaratory of the public policy of the State touching the main elements affected by the application of this municipal immunity doctrine, it may reasonably be implied that no public policy longer exists which precludes a proceeding such as that now before us, by which the creditor seeks to subject the funds of a non-resident debtor whose obligation to the City has been fully performed. Affirmed.