472 P.2d 479

CITY OF PHOENIX, a municipal corpo-
ration, Appellant,

v.

COLLAR, WILLIAMS & WHITE ENGI-
NEERING, INC., an Arizona cor-
poration, Appellee.

No. I CA–CIV 1065.

Court of Appeals of Arizona,
Division 1,
Department B.

July 29, 1970.

Robert J. Backstein, City Atty., by Westlyn C. Riggs, Asst. City Atty., Phoenix, for appellant.

Murphy, Posner & Franks, by Michael L. Murphy, Phoenix, for appellee.

EUBANK, Presiding Judge.

The important substantive question before us in this appeal after a default judgment in a garnishment proceeding is whether a municipality can be held liable as garnishee with respect to any indebtedness other than that payable to its officers and employees as salaries. See A.R.S. § 12–1601. We answer the question in the negative.

All of the following pertinent events took place in 1968. In January, the appellee corporation obtained a judgment in the amount of $5,585.91 against one Stauffer in Cause No. 203379 in the Superior Court of Maricopa County. On May 15, appellee had a writ of garnishment served upon the appellant City of Phoenix. The City filed a return to the writ, stating that Stauffer was not in its employ, and that it was not indebted to him. Shortly thereafter, appellee filed a controverting affidavit and a tender of issue, which together in substance alleged that Stauffer, doing business as Clyde Stauffer & Associates, had recently performed a contract for the City in connection with a construction project and that funds were due and owing by the City to Stauffer under the completed contract.

When the City did not respond to the tender of issue within ten days, appellee entered its default and on July 11 served upon the City a notice of application for judgment. The City promptly moved on July 12 to set aside the entry of default. This motion was orally argued on July 16 and taken under advisement by the court. Nothing further occurred in the matter prior to August 27, when appellee caused a second writ of garnishment to be served upon the City. It is this second writ which is in issue here. The City admits that no "formal answer" to this writ was ever filed. On August 30, however, the City filed a response to appellee's previous tender of issue, denying any indebtedness owed by it to Stauffer. The City also filed on August 30 an amended motion to set aside the entry of default. The City's original motion was still under advisement at this time.

On September 9, the court entered an order granting the City's motion to set aside the entry of default with respect to the first writ of garnishment. On September 18, however, appellee entered the City's default with respect to the second writ of garnishment. Nothing further took place prior to October 21, when the trial court entered a minute order setting a default hearing at 9:00 A.M. on October 24. This was done at the request of appellee's attorney. According to a subsequent affidavit of the attorney for the City who was handling the case, he received a copy

512

of this minute entry order by mail on October 23, and this was his first knowledge that a default hearing was to be held. Other affidavits filed by the City indicated that the second writ of garnishment had been misplaced, and that the City's attorney in the matter did not have any knowledge that a second writ had been served until he appeared at the default judgment hearing on October 24. The City's attorney objected to entry of judgment at this hearing on various grounds. The objections were unavailing, and a default judgment was entered against the City in the full amount of appellee's judgment against Stauffer. The City's subsequent motions pursuant to Rule 60(c) of the Rules of Civil Procedure, 16 A.R.S., to have the judgment set aside were denied, and it brings this appeal.

■ One of the City's contentions is that the default judgment is absolutely void for failure of the appellee to give it three days' notice of hearing on appellee's application for entry of default judgment. The contention is based upon Rule 55(b) of our Rules of Civil Procedure as applied by our Supreme Court in McClintock v. Serv-Us Bakers, 103 Ariz. 72, 436 P.2d 891 (1968).

Rule 55(b) (1) reads in pertinent part as follows:

> "In all cases the party entitled to a judgment by default shall apply to the court therefor * * *. If the party against whom judgment by default is sought has appeared in the action, he or, if appearing by representative, his representative, shall be served with written notice of the application for judgment at least three days prior to the hearing on such application."

Although the authorities on the effect of noncompliance are in some conflict elsewhere, see Annot., 51 A.L.R.2d 837 (1957), it is abundantly clear in Arizona that failure to give the three day notice when it is required by the terms of Rule 55(b) (1)

renders the subsequent default judgment absolutely void and a nullity. McClintock, supra, and cases cited therein; cf. the pre-McClintock decisions in Lawrence v. Burke, 6 Ariz.App. 228, 431 P.2d 302 (1967), and Nesbitt v. Nesbitt, 1 Ariz.App. 293, 402 P.2d 228 (1965).

The question in the present case is whether the 55(b) (1) notice requirement is applicable in the second garnishment proceeding. For the affirmative, the City points out that both garnishments were issued in the same cause No. 203379, and that it made an appearance in the first garnishment proceeding. The City also argues, in essence, that even if the second garnishment be deemed a second and separate "action" for 55(b) (1) purposes, its activities on August 30 with respect to the first garnishment proceeding which took place after issuance and service of the second writ of garnishment should be held to constitute an appearance in the second garnishment proceeding. For the negative, appellee relies upon the distinct nature of each of several successive garnishment proceedings and contends that since none of the City's activities in Cause No. 203379 were referable to the second garnishment, the requirement of 55(b) (1) does not apply.

■ In our view, the terms of 55(b) (1) considered in the context of garnishment proceedings do not readily lend themselves to the position taken by appellant. 55(b) (1) is designed to protect a party " * * * has appeared in the action * * *." While a garnishment proceeding is always ancillary to the main or principle action, see Weir v. Galbraith, 92 Ariz. 279, 289, 376 P.2d 396, 403 (1962), it is a necessary conclusion from McClintock, supra, that a garnishment proceeding is itself an "action" for the purposes of 55(b) (1). It seeks to ascertain and recover indebtedness owing at the time of *its* service. In Byers v. Comer, 50 Ariz. 134, at 136, 70 P.2d 330 (1937),[1] each of two

1. Modifying Byers v. Comer, 59 Ariz. 8, 68 P.2d 671 (1937).

garnishments was referred to as "separate from the other" and "lacking identity of subject-matter." It logically follows that successive garnishments are separate *actions* for the purposes of 55(b) (1). The McClintock case, which involved two garnishments, appears to tacitly recognize this principle in its statement of the case, wherein it was pointed out that "On both occasions, and within the time allowed by law to answer, appellee's [garnishee's] sales manager filed letters with the justice of the peace denying any indebtedness." McClintock, supra, at 103 Ariz. 73, 436 P.2d 892.

The terms of Rule 55(b) (1) are reasonably clear and certain, even as they have been applied to a garnishment which has been in effect held to be an "action within an action." We are not disposed to expand the meaning of the rule by construction. The City of Phoenix filed no answer to the second writ, and it does not appear that it took any informal action with respect to it which might be construed as an appearance under the circumstances. *Cf.* Press v. Forest Laboratories, Inc., 45 F.R.D. 354 (S.D.N.Y.1968). The City filed nothing which was not exclusively referable to the first garnishment proceeding. We agree with appellant that courtesy should have prompted some kind of notice,[2] but we hold that the City, not having appeared in respect to the second garnishment, was not legally entitled to notice under 55(b) (1).

On the other hand, we have very little hesitation in agreeing with the City in its secondary contention, that the trial court abused its discretion in refusing to set aside the default judgment upon the City's timely application.

Under Rule 60(c) (1) of our Rules of Civil Procedure, a party may upon timely application be relieved of a judgment when it results from mistake, inadvertence, surprise, or excusable neglect. A party seeking relief on these grounds must make a factual showing in support thereof and must also show that he has a substantial and meritorious defense. Gonzales v. Whitney, 90 Ariz. 324, 330, 367 P.2d 668, 671 (1961). Once a proper showing has been made, the exercise of the trial court's sound discretion should be guided by the policy favoring resolution of controversies on the merits. *Id.* It has been said that resolution on the merits is particularly favored in garnishment proceedings. Gutierrez v. Romero, 24 Ariz. 382, 387, 210 P. 470, 472 (1922); Riggs v. Huachuca Investment Co., 2 Ariz.App. 527, 529, 410 P.2d 149, 151 (1966).

As to the City's showing of inadvertence, it appears that key City administrative personnel were on vacation at the time the second writ was served. It also appears that the writ was improperly processed in the City's Division of Accounts for some unknown and unanticipatable reason and thereafter misdirected by substitute personnel in the Law Department. The City's attorney had no knowledge of the second writ until the day that default judgment was entered, and they took diligent steps to have the default set aside. We think the City's showing in this regard is sufficient.

We thus come to the question of whether the City had a substantial and meritorious defense. In that respect, it was and is the City's position that the case of State v. Allred, 102 Ariz. 102, 425 P.2d 572 (1967), affords it a complete defense. In Allred, our Supreme Court held void a judgment against the State of Arizona in a garnishment proceeding for the amount of a cash deposit which a racetrack had given to the State. The decision was based upon the terms of A.R.S. § 12–1601, which reads as follows:

"The salaries of officers, deputies, clerks and employees of the state or its political subdivisions shall be subject to garnishment as provided in this article,

---

2. See, for perspective on this matter, the annotation entitled "Failure to give notice of application for default judgment

where notice is required only by custom", 28 A.L.R.3d 1383 (1969).

and such garnishment shall not be construed as against public policy."

This is the only Arizona statute which expressly permits garnishment of the state or its "political subdivisions." The court in Allred applied the maxim *expressio unius est exclusio alterius,* and held that indebtedness *other than salaries* owed to the named officials and employees could not be the subject of garnishment proceedings. The City claims that Allred is dispositive because in its response to the first writ of garnishment and in its post-judgment motions in the second garnishment proceedings it made a showing that the judgment debtor Stauffer was an independent contractor under contract with the City to perform construction engineering services.

If the City of Phoenix is a "political subdivision" of the State of Arizona within the terms of A.R.S. § 12–1601, it would logically follow under Allred that the City can only be liable in a garnishment proceeding for stipends owed to its salaried personnel.

■ Some courts in some contexts have held that a city is not embraced within the scope of the term "political subdivision" of a state.[3] But the general rule appears to be that cities are "political subdivisions" of a state. See City of Albuquerque v. Campbell, 68 N.M. 75, 358 P.2d 698, 701 (1961), and cases cited. The question is not an open one in Arizona. Article 9, Section 7 of our Constitution, A.R.S., refers

to "* * * any county, city, town, municipality, *or other subdivision of the State* * * *."* (Emphasis added). In Maricopa County Municipal Water Conservation District No. 1 v. LaPrade, 45 Ariz. 61, at 77, 40 P.2d 94, at 100 (1935), the court referred to cities and towns as "* * * political subdivisions of the state in the full sense of the term * * *." See also Day v. Buckeye Water Conservation & Drainage District, 28 Ariz. 466, at 473–474, 237 P. 636, at 638 (1925). Further, other legislative enactments expressly include cities within definitions of the term "political subdivision",[4] and the provisions of A.R.S. § 12–1601 et seq., do not persuade us to conclude that the legislature meant to give the term a mere restrictive meaning in this legislation relating to garnishments. We accordingly hold that A.R.S. § 12–1601 applies to cities.

We could wind up an already lengthy opinion here, but for the case of Packard Phoenix Motor Co. v. American—LaFrance & Foamite Corp., 37 Ariz. 35, 288 P. 1024 (1930). The Packard Phoenix case held the City of Phoenix liable as a garnishee with respect to funds owed by it to an out-of-state supplier of a fire engine. The principal action and pre-judgment writ of garnishment were prosecuted by a local enterprise which claimed a commission on the sale of the fire engine to the City. The court in Packard Phoenix rejected the then-and-still prevailing majority rule[5] which prohibited the garnishment of municipalities on grounds of public policy

3. See Kansas City v. Neal, 122 Mo. 232, 26 S.W. 695 (1894). distinguished by our own Supreme Court in Sorenson v. Superior Court, 31 Ariz. 421, 425–426, 254 P. 230, 231 (1927), and Abbott v. City of Los Angeles, 50 Cal.2d 438, 326 P.2d 484, 501 (1958). It would also appear that in Texas in a garnishment contest a city is not considered a political subdivision of that State. See Willacy County Water Control & Improvement District No. 1 v. Abendroth, 142 Tex. 320, 177 S.W.2d 936 (1944). And see Taylor v. Roosevelt Irrigation District, 72 Ariz. 160, at 164, 232 P.2d 107, at 109 (1951) [modifying Taylor v. Roosevelt Irrigation

District, 71 Ariz. 254, 226 P.2d 154 (1950)] drawing a distinction between "political subdivisions" and "municipalities" for the purposes of the doctrine of sovereign immunity which existed in this state prior to Stone v. Highway Commission, 93 Ariz. 384, 381 P.2d 107 (1963).

4. A.R.S. § 2–321, subsec. 4; A.R.S. § 38–701, subsec. 5, as amended; A.R.S. § 38–741, subsec. 8, as amended; A.R.S. § 38–382, subsec. 3. See also A.R.S. § 38–502 and A.R.S. § 13–281, which do not explicitly refer to cities.

5. See 17 McQuillen, Municipal Corporations (3rd Ed. 1968 Rev. Vol.), § 49.86.

in the absence of express statutory authorization. The public policy involved is that of keeping public entities free of the inconvenience of handling garnishments and appearing in litigation in which they have no concern. See footnote 5. In rejecting this majority rule, the Packard Phoenix decision indicated that garnishment was permissible when the municipality's debt to the principal defendant was liquidated and unconditional. Packard Phoenix has never been cited in any subsequent garnishment case, but it has never been expressly overruled.

The facts with which Packard Phoenix was concerned took place prior to the effective date of present A.R.S. § 12–1601. We have, in our independent research, gone at some length into the various suggested alternative grounds for the Packard Phoenix holding. Even apart from the enactment of present § 12–1601, there are statements and assumptions made in Packard Phoenix which cannot be reconciled with statements in the later cases of State v. Surety Finance Co., 42 Ariz. 42, 21 P.2d 929 (1933), and Grande v. Casson, 50 Ariz. 397, 72 P.2d 676 (1937), overruled on two immaterial grounds in State ex rel. Morrison v. Thelberg, 87 Ariz. 318, 350 P.2d 988 (1960), and Stone v. Highway Commission, 93 Ariz. 384, 381 P.2d 107 (1963). The material portion of Grande v. Casson is cited approvingly in the Allred case, supra. Since, as we have held, a city is a "political subdivision", to give effect to Packard Phoenix would be to deny effect to or to qualify the Allred holding. It is obvious that by statute and by subsequent decision, Packard Phoenix has been relegated to the dust-bin of superseded authority. To find a waiver of the qualified immunity granted the municipality by § 12–1601 in anything less than explicit language in the city's charter waiving the particular immunity would conflict with the terms and intent of § 12–1601.

It follows that the City of Phoenix has a "substantial and meritorious defense" to the garnishment in question here and that it was an abuse of discretion to refuse to set aside the default judgment in question. We cannot, at this time, go further and hold the second garnishment proceedings "void", as did the court in Allred. In Allred, the state had answered the writ and it was clear that the funds in question were not salary owed to an employee. The City of Phoenix has not answered the second writ in the present case and the writ itself does not affirmatively and conclusively establish on its face that Stauffer is not a salaried employee of the City of Phoenix. This is a matter to be established in the ordinary manner in the trial court.

Should the matter come into controversy, we do not think that the legislature intended the term "employees" as used in A.R.S. § 12–1601 to be a term of broad significance which might include an independent contractor performing specified tasks on a job or contract basis. We think that term, which follows the terms "officers, deputies, clerks" is clearly intended to refer only to regular, salaried personnel of the public entity. We disagree with the contrary dicta in Wheeler v. Walter J. Bryson Co., 162 Tenn. 163, 35 S.W.2d 391 (1931), on this subject.

Reversed and remanded for further proceedings not inconsistent herewith.

HAIRE and JACOBSEN, JJ., concur.