[Civil No. 2600.  Filed March 16, 1927.]

[254 Pac. 230.]

S. C. SORENSON, Relator, v. SUPERIOR COURT OF THE STATE OF ARIZONA, IN AND FOR THE COUNTY OF MARICOPA, and JOSEPH S. JENCKES, Judge of Division No. 2 of the Said Superior Court of the State of Arizona, in and for the County of Maricopa, Respondents.

Messrs. Dougherty & Dougherty, for Relator.

Mr. E. S. Clark and Mr. W. J. Van Spanckeren, for Respondents.

LOCKWOOD, J.—S. C. Sorenson, hereinafter called relator, made application in this court for an original writ of prohibition directed against the superior court of Maricopa county and the judge of division No. 2 thereof, prohibiting them from proceeding

with the hearing of action No. 25,853, pending in said superior court, on the ground that the court had no jurisdiction to consider it. The particular action referred to was brought by R. B. Findley, hereinafter called contestant, for the purpose of contesting a school election. The complaint alleges, among other things, that on the thirty-first day of October, 1926, an election was held in the Mesa union high school district in Maricopa county for the purpose of choosing a member of the board of education of said district. At such election relator and one L. J. Barden were candidates. The returns were duly canvassed by the proper authorities, and relator was declared elected, whereupon contestant brought a contest, praying that Barden be declared the legally chosen member of the board. Relator demurred to the jurisdiction of the court, and after the matter had been duly argued and submitted, the demurrer was overruled, and the case noticed for further proceedings, whereupon an application was made to this court for a writ of prohibition as above set forth.

The first question before us is whether or not a writ of prohibition lies under these circumstances. We do not think it necessary or advisable to discuss this issue, as the application will be determined upon its merits. Assuming, therefore, for the purposes of this case, without deciding, that a writ of prohibition is the proper remedy, if as, contended by relator, the superior court has no jurisdiction to hear and determine a contest of this nature, we pass to the consideration of whether or not such jurisdiction does as a matter of fact exist.

Election contests, of course, are unknown to common law, and can be instituted only when there is express statutory authorization therefor. *McCall* v. *City of Tombstone,* 21 Ariz. 161, 185 Pac. 942.

We must therefore look to our statutes to see if contestant is given any right therein to maintain his action. Such authority exists, if at all, by virtue of paragraph 3065, Revised Statutes of Arizona of 1913, Civil Code, which reads, so far as material to the determination of this question, as follows:

"Any elector of a county, city, or any political subdivision of either, may contest the right of any person declared elected to an office to be exercised therein for any of the following reasons. . . . "

It is apparent that the issue turns upon whether or not a union high school district is, within the language of the paragraph just quoted, a "political subdivision" of a county. If it is, a contest lies, of which the superior court has jurisdiction. If it is not, no contest is allowed, and that court has no right to consider it.

Is a union high school district a "subdivision" of a county? Chapter 7, title 11, Revised Statutes of Arizona of 1913, Civil Code, deals with the organization of school districts. From the various paragraphs of the chapter it appears that every school district is designated as "school district No. —— of —— county (using the name of the county in which such district is located)"; that in forming it applications must be made to a particular county school superintendent; that it must be carved out of one county; that reports of its boundaries must be made by the superintendent to the board of supervisors of that particular county, and that whenever two districts are consolidated the application must be made to one superintendent. The funds for the support of a district, except in so far as they come from the state itself, are raised by the action of the authorities of the county. Nowhere in the statutes is there any suggestion that a school district may be formed or operated, except as a part of some one county, or a

division of consolidation of districts already existing in such county.

The provisions in regard to union high school districts are found in chapter 13 of the same title, and on examining them it is equally apparent the same principles apply to a union high school district as to a single district. It must be, necessarily, an organization formed from school districts of the same county, and the funds for its maintenance are levied by the board of supervisors of the county. It is therefore equally with the individual district a "subdivision" of a county. This, we think, cannot be successfully denied.

Is it, however, a "political" subdivision? "Political" has been defined by Webster as "relating to the management of affairs of state; of or pertaining to or incidental to the exercise of functions vested in those charged with the conduct of government."

In discussing a somewhat analogous question, the Supreme Court of Indiana, in *Freel* v. *Crawfordsville,* 142 Ind. 27, 37 L. R. A. 301, 41 N. E. 312, said, referring to school districts:

"In performing the duties required of them they exercise merely a public function and agency for the public good for which they receive no private or corporate benefit. School corporations, therefore, are governed by the same law in respect to their liability to individuals for the negligence of their officers or agents as are counties and townships. . . . Such subdivisions then, as counties, townships, and school corporations are instrumentalities of government, and exercise authority given by the state."

We have quoted this language approvingly in the case of *School Dist. No. 48 of Maricopa County* v. *Rivera,* 30 Ariz. 1, 45 A. L. R. 762, 243 Pac. 609.

Indeed, we think that the education of the children of the state is one of the highest, if not the highest, political function which it has.

The Supreme Court of New Jersey, in *Landis et Ux.* v. *Ashworth,* 57 N. J. L. 509, 31 Atl. 1017, said:

"School districts are formed for the purpose of aiding in the exercise of that governmental function which relates to the education of children, and to that end the legal voters of each district are intrusted with specified powers of local government, and the trustees whom they elect are made a body corporate to represent the district and its inhabitants. These characteristics mark them as political organizations."

And in the case of *Lydecker* v. *Commissioners,* 41 N. J. L. 154, the court well defined the characteristics of a political subdivision as follows:

"These distinctive marks are, I think, that they embrace a certain territory and its inhabitants, organized for the public advantage, and not in the interest of particular individuals or classes; that their chief design is the exercise of governmental functions, and that to the electors residing within each is, to some extent, committed the power of local government, to be wielded either mediately or immediately, within their territory, for the peculiar benefit of the people there residing. Bodies so constituted are not merely creatures of the state, but parts of it, exerting the powers with which it is vested for the promotion of those leading purposes which it was intended to accomplish, and according to the spirit which actuates our republican system."

We have examined all the cases cited by counsel for relator on this issue in both their original and reply briefs. So far as we can discover, the only one which bears directly on the point in question, to wit, the meaning of the words, "political subdivision," is the case of *Kansas City* v. *Neal et al.,* 122 Mo. 232, 26 S. W. 695. Therein the court says:

"That Kansas City is not a political subdivision of the state, within the meaning of the Constitution is equally clear. 'Subdivision' means to divide into smaller parts the same thing or subject-matter, and

no city or town in this state is a subdivision thereof, except the city of St. Louis; and it became so under sections 20, 22 and 23, article 9, Constitution, and by an act of the Legislature, in pursuance thereof, setting off certain defined boundaries defining the city limits, and conferring upon the city all the rights and privileges possessed by a county.''

The effect of the case from which we have just quoted was to hold that the only possible subdivision of the state, in view of the Missouri Constitution, was a county, a situation very different from that existing in the case at bar.

The case of *State ex rel. Fawcett* v. *Superior Court of Pierce County,* 14 Wash. 604, 33 L. R. A. 674, 45 Pac. 23, upon which relator seems particularly to rely, merely holds that a statute providing that ''any elector of the proper county may contest the right of any person declared duly elected to an office to be exercised in and for such county; and also any elector of a precinct may contest the right of any person declared duly elected to any office in and for such precinct, . . . '' does not confer jurisdiction to try a contest for the office of mayor of a municipality. With this statement of the law we heartily agree. Nor do we find anything in the case of *McCall* v. *Tombstone, supra,* contrary to the views expressed herein.

It appearing that members of the board of education of union high school districts are officers of a political subdivision of a county, within the provisions of paragraph 3065, *supra,* it follows that the superior court of Maricopa county had jurisdiction to hear and determine the contest initiated before it. The alternative writ of prohibition is therefore quashed.

ROSS, C. J., and McALISTER, J., concur.