624 P.2d 1281

**AMPHITHEATER UNIFIED SCHOOL DISTRICT # 10, a body politic, Petitioner,**

v.

**Court Commissioner Lawrence K. Bret HARTE and the Superior Court of the State of Arizona In and For the County of Pima, The Civil Rights Division of the Attorney General's Office/Arizona Department of Law, real party in interest, Respondents.**

No. 14806.

Supreme Court of Arizona,
In Banc.

Feb. 13, 1981.

Rehearing Denied March 17, 1981.

Stephen D. Neely, Pima County Atty. by Lawrence Ollason, Sp. Deputy County Atty., Tucson, for petitioner.

Robert K. Corbin, Atty. Gen. by Phillip A. Austin, Philip G. Urry, Asst. Atty. Gen., Phoenix, for respondents.

HOLOHAN, Vice Chief Justice.

By Special Action the petitioner, Amphitheater Unified School District # 10, challenges the action of the Superior Court of Pima County in its denial of petitioner's motion to dismiss an employment discrimination suit filed against it by the Civil Rights Division of the Attorney General's office. We accepted jurisdiction pursuant to Art. 6, § 4 of the Arizona Constitution.

The essential facts are that the Civil Rights Division filed an employment discrimination action against Amphitheater Unified School District # 10 whereby it alleged that Amphitheater discriminated

against Jillyn B. Smith by not hiring her to fill the position of football coach-biology teacher. The Civil Rights Division sought individual relief for Ms. Smith along with an injunction, forbidding Amphitheater from coupling academic teaching positions with part-time coaching positions in male dominated sports.

The petitioner raises two primary contentions:

1. That the Attorney General is prevented by statute from bringing an employment discrimination suit against a school district;

2. That the Attorney General may not bring suit against the petitioner because it constitutes a conflict of interest.

The petitioner contends that the Attorney General is specifically proscribed by A.R.S. § 41–1481(D) from bringing an employment discrimination action against petitioner. The statute reads:

"If within thirty days after the [civil rights] division has made a determination ... the division may bring a civil action against the respondent, other than the state, named in the charge.... Upon timely application, the court may in its discretion permit the division to intervene in civil actions in which the state is not a defendant upon certification that the case is of general public importance."

The Attorney General has no common law powers, but only such powers as are conferred by the state constitution or by statute. *Arizona State Land Department v. McFate*, 87 Ariz. 139, 348 P.2d 912 (1960). The statute quoted above specifically restricts the Attorney General from independently bringing suit in employment discrimination cases where "the state [is] named in the charge" or "in which the state is a defendant." It is the petitioner's position that the term "state," as used in this instance, included school districts.

Arizona case law has not clearly determined the precise nature of a school district. In *Sorenson v. Superior Court in and for Maricopa County*, 31 Ariz. 421, 254 P. 230 (1927), this court held that a high school district is a political subdivision of the county. In *Jarvis v. Hammons*, 32 Ariz. 124, 256 P. 362 (1927), *modified*, 32 Ariz. 318, 257 P. 985 (1927), the court held that a school district is a legal entity separate and distinct from the county within whose physical boundaries it lies. In *State v. Davey*, 27 Ariz. 254, 232 P. 884 (1925), and in *Hernandez v. Frohmiller*, 68 Ariz. 242, 204 P.2d 854 (1949), the court referred to school districts as political subdivisions of the state.

A majority of other jurisdictions classify school districts as political or civil subdivisions of the state. *Lovell v. School District No. 13*, 172 Or. 500, 143 P.2d 236 (1943); *Wichita Public Schools Employees Union, Local No. 513 v. Smith*, 194 Kan. 2, 397 P.2d 357 (1964); *Bagby v. School District No. 1*, 186 Colo. 428, 528 P.2d 1299 (1974); *Watts v. Double Oak Independent School District*, 377 S.W.2d 779 (Tex.Civ.App.1964); *Cotton States Mutual Insurance Co. v. Keefe*, 215 Ga. 830, 113 S.E.2d 774 (1960); *Skelly v. Westminster School District of Orange County*, 103 Cal. 652, 37 P. 643 (1894); 78 C.J.S. *Schools and School Districts* § 24 (1952).

We are satisfied that the proper classification of school districts is that of political subdivisions of the state. As thus defined, the question at issue may be restated: Does the term "state" as used in A.R.S. § 41–1481(D) include political subdivisions?

The term "state" is not specifically defined in the statute at issue nor in any of the other statutory provisions dealing with the same subject matter. In such instances, unless it appears from the context or otherwise that a different meaning should control, the usual meaning of the word should be applied. *State v. Carter*, 123 Ariz. 524, 601 P.2d 287 (1979); *Kilpatrick v. Superior Court in and for Maricopa County*, 105 Ariz. 413, 466 P.2d 18 (1970); *State ex rel. Frohmiller v. Hendrix*, 59 Ariz. 184, 124 P.2d 768 (1942).

The usual meaning of the term "state" is not easily determined because it has been defined and used in various ways in statutes and court decisions. Where a word in

a statute is susceptible of more than one meaning the court must adopt such interpretation as is reasonable. In seeking the reasonable interpretation the court will consider the statute as a whole to determine its intent and purpose. *Employment Security Commission of Arizona v. Fish,* 92 Ariz. 140, 375 P.2d 20 (1962).

The definitions applicable to the statutory article on discrimination in employment help to refine the intent of the legislature. In A.R.S. § 41–1461(2) the term "Employer" is defined as "a person who has fifteen or more employees." The same section defines the term "Person" to mean: "[O]ne or more individuals, governmental agencies, *political subdivisions,* labor unions, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in bankruptcy or receivers." A.R.S. § 41–1461(5) (emphasis supplied). We believe the above clearly indicates that the legislature recognized political subdivisions as separate entities.

It is also helpful to refer to the federal legislation from which A.R.S. § 41–1481(D) was derived. The federal statute is 42 U.S.C. § 2000e–5(f)(1) (1970). In pertinent part, the federal legislation provides that: "[T]he Commission [Equal Employment Opportunity Commission] may bring a civil action against any respondent not a government, governmental agency, or political subdivision named in the charge." The Arizona legislation provides that: "[T]he division [Civil Rights Division] may bring a civil action against the respondent, other than the state, named in the charge." It is apparent that the example of the federal legislation in specifically excluding political subdivisions was not followed in the state enactment. We conclude that this omission is another indication of the intent of the legislature to limit the meaning of the term "state."

█ Based on the differences between the federal and state legislation and the definitions in the state legislation, we hold that the term "state" does not include political subdivisions. The petitioner high school district is not included within the term "state" as used in A.R.S. § 41–1481(D).

█ Petitioner contends, however, that even if a high school district is not included within the term "state," the Attorney General may not bring an action against the petitioner because it would constitute a conflict of interest. Petitioner points out that the Attorney General has supervisory authority over the county attorneys (the legal advisors of the school districts—A.R.S. § 11–532(A)(10)); that the Attorney General reviews opinions of the county attorneys on school matters and issues legal opinions himself on school matters relating to all school districts. *See* A.R.S. §§ 41–193(A) and 15–122.

Petitioner does not allege any facts which show an actual or real conflict of interest. In reviewing the statutes called to our attention, we find nothing in the actions of the Attorney General in this case which might be termed a conflict of interest.

From the foregoing, we find that the trial court's denial of petitioner's motion to dismiss was correct and petitioner is not entitled to relief in this court. Relief denied.

HAYS and GORDON, JJ., concur.

CAMERON, Justice, dissenting.

In 1979, the Civil Rights Division of the Attorney General's Office brought an employment discrimination action against Amphitheater, alleging that the school district's discriminatory practices had precluded the hiring of Jillyn Smith to teach high school biology. The Attorney General sought individual relief for Jillyn Smith and an injunction forbidding Amphitheater from coupling academic teaching positions with part-time coaching positions in male dominated sports like football. Smith now has private counsel and her personal suit is not involved in this special action.

I dissent because I believe that the school district is a state agency and because I believe there is a conflict of interest which

would make it inappropriate for the Attorney General to represent the teacher against the school district.

I

The Civil Rights Division's sole authority for the bringing of this suit is derived from A.R.S. § 41–1481(D), which reads as follows:

"If within thirty days after the division has made a determination that reasonable cause exists to believe that the charge is true the division has not accepted a conciliation agreement to which the charging party and the respondent are parties, *the division may bring a civil action against the respondent, other than the state, named in the charge.* * * * *"* (Emphasis added)

Amphitheater argues that a school district is part of "the state" as used in A.R.S. § 14–1481 and that the Attorney General therefore may not prosecute this action against it. The Attorney General and the majority of this court hold that, while a school district may be considered a "political subdivision" of the state, it is not a state agency. I disagree.

The Arizona Constitution, in Article XI, imposes numerous requirements pertaining to education in this state. The most basic of these is that the "Legislature shall enact such laws as shall provide for the establishment and maintenance of a general and uniform public school system * * *." Ariz. Const., Art. XI, § 1. The Constitution mandates that "the general conduct and supervision of the public school system shall be vested in a State Board of Education * * *" and sets forth minimum calendar, access and funding provisions to guide the legislature. Art. XI, supra, §§ 2, 6, 8.

The legislature has fulfilled its constitutionally mandated duty to provide for schools in Arizona by enacting A.R.S. Title 15, entitled EDUCATION. Title 15, by providing for virtually every area of concern in the field, makes clear the fact that the legislature has plenary power over public education in this state. It is the legislature which has ultimate control over the forma-tion, consolidation and dissolving of school districts and their boundaries. A.R.S. §§ 15–402, –409, –413. The legislature is responsible for the very existence of district boards of trustees, and these trustees have only the power which the state allows them. A.R.S. §§ 15–431 through –479.

The State Board of Education is empowered to "[e]xercise general supervision over and regulate the conduct of the public school system," A.R.S. § 15–102(A)(14); and the State Superintendent of Public Instruction acts as the Board's Chief Executive Officer. A.R.S. §§ 15–121, –121.01, –122. The State Board is no mere titular authority. It manages the state school fund, prescribes subjects to be taught, establishes which textbooks may be bought and how many must be provided, determines graduation requirements, prescribes uniform systems of record-keeping and accounting, and has developed and implemented a uniform evaluation of pupil achievements in reading, writing, and computation. The Board controls certification of teachers and establishes qualifications for professional non-certificated personnel; it is the ultimate arbiter of teachers' fitness, and it is empowered to withdraw essential certification from those it deems not suitable to practice in local schools. A.R.S. § 15–102(A). It is at the state level that teachers' essential duties are established. A.R.S. § 15–201. There is a state-mandated tenure system, with required procedures for teacher evaluation and dismissal. A.R.S. §§ 15–251 through 265, 268. The state administers a mandatory teacher retirement fund, for purposes of which all teachers are considered state employees. A.R.S. Title 15, Chapter 14.

This brief survey of some of the provisions of Title 15 does not exhaust the measures the legislature has enacted pursuant to its constitutional mandate to provide for education in Arizona. I believe it is sufficient, however, to show that education in this state, as in nearly every state in the country, is a state government function and that school districts are state agencies mandated and organized under state law. As

has been stated in considering a constitutional provision similar to our own:

"Education is a function or duty not regarded as a local matter. It is a governmental obligation of the state. Few of our administrative agencies are creatures of the organic law. But, as to schools, the constitution mandates the legislature to provide by law 'for the establishment of a uniform, and general system of Common schools.' Oregon Constitution, Art. VIII, § 3; 47 Am.Jur. 299, Schools § 6. It is a sovereign power and cannot be bartered away. * * *

"A school district, as a legislatively created entity, enjoys closer proximation to the state than to the community it serves. It is a civil division of the state and has been referred to as a corporation having the most limited powers known to the law. It is a quasi-municipal corporation separate and distinct from pure municipal corporations such as cities and towns." *Monaghan v. School District No. 1*, 211 Or. 360, 373–74, 315 P.2d 797, 804 (1957). See also *City of Bloomfield v. Davis County Community School District*, 254 Iowa 900, 119 N.W.2d 909 (1963); *Jones v. Grand Ledge Public Schools*, 349 Mich. 1, 84 N.W.2d 327 (1957); *Edmonds School Dist. No. 15 v. City of Mountlake Terrace*, 77 Wash.2d 609, 465 P.2d 177 (1970); 78 C.J.S. Schools, §§ 12, 13, 24, 83; 41 A.L. R.3d 1220.

I agree that A.R.S. § 41–1481(D)'s exception to the Civil Rights Division's litigation power is meant to apply only to state agencies and is not meant to immunize all political subdivisions against suits by the Division. I do not believe, however, as the Civil Rights Division contends, that school districts belong in the latter category. Despite the influence exerted upon them by residents within their boundaries, school districts are essentially an arm of the state, performing a function required of the state by our Constitution and as such are state agencies.

I would therefore hold that the Attorney General is precluded by the specific exception contained in A.R.S. § 41–1481(D) from prosecuting a civil rights action against Amphitheater Unified School District No. 10.

## II

I also believe that there is a conflict of interest between the Attorney General in prosecuting the Amphitheater Unified School District and in the Attorney General's responsibility to advise the district. Pursuant to A.R.S. § 41–193(A)(7), the Attorney General renders decisions at the request of officers of the state and county attorneys. A.R.S. § 15–122 provides for opinions of the Attorney General to be distributed to all school districts.

As a practical matter, most opinions advising the school districts and school boards are drafted by the county attorney. These opinions are then submitted to the Attorney General for his approval or disapproval. From the published opinions of the Attorney General, it appears that the Attorney General does one of three things. The Attorney General may decline to review the opinion. For example, in opinion I79–052[R78–309], the Attorney General declined to review a county attorney's decision relating to what constitutes insubordination by a tenured teacher. In I79–053[R78–331], the Attorney General concurred in the opinion given to the superintendent of the Sunnyside Unified School District which concluded that only superintendents and principals may be granted a contract for up to four years pursuant to statute, and in Attorney General's opinion I79–055[R78–357], the Attorney General reviewed the advice of the Yuma County Attorney to the Antelope Union High School District and revised portions of the county attorney's opinion. The Attorney General will also give gratuitous advice in approving opinions of the county attorney. For example, in I79–18[R79–005], the Attorney General concurred in the county attorney's opinion, but concluded that the ranking system under discussion "could create substantial difficulties for the school district if it were proved that the system results in an adverse impact on protected persons in a discrimina-

**238**

tion lawsuit brought against the district under Title 7 of the Federal Civil Rights Act of 1964." The Attorney General then approves, rejects or amends the opinions of the county attorney when they involve advice to school boards, and the Attorney General also makes direct opinions concerning school affairs. See, for example, I79–24[R77–298], made to the Department of Education. A.R.S. § 15–436(B) provides that if the school board relies on the opinion of the Attorney General, the members will be shielded from personal liability.

Pursuant to statute, if there is a conflict between opinions of the county attorneys and the Attorney General, the "opinion of the attorney general shall prevail." A.R.S. § 15–122(B).

I believe that the Attorney General is somewhat more than a merely passive advisor to the school districts. He is, in many respects, their attorney and the last word on their conduct. For this reason, I believe there is a conflict of interest in the Attorney General prosecuting the same school board he advises in his capacity as Attorney General.

STRUCKMEYER, Chief Justice, dissenting.

I concur with Justice Cameron in his belief that the High School District is a State agency. In addition to the reasons which he sets forth in his dissent, I feel that the Constitution of Arizona plainly controls.

By art. 11, § 1, of the Constitution of Arizona, it is provided:

"The Legislature shall enact such laws as shall provide for the establishment and maintenance of a general and uniform public school system, which system shall include kindergarten schools, common schools, high schools, normal schools, industrial schools, and a university * * *."

If the high schools of this State are not State agencies, then neither are the universities nor is the Board of Regents. See *State of Arizona v. Miser*, 50 Ariz. 244, 72 P.2d 408 (1937); *City of Tempe v. Arizona Board of Regents*, 11 Ariz.App. 24, 461 P.2d 503 (1969). This is, of course, palpably absurd.

Moreover, by art. 11, § 10, of the Constitution, the Legislature is required to "make such appropriations * * * as shall insure the proper maintenance of all State educational institutions." Since the Constitution, by art. 11, § 1, requires that the Legislature establish high schools as part of the State educational system, the words "all State educational institutions" used in § 10 can only refer to those educational institutions named in § 1. The conclusion is absolutely compelled that the public school system is a State system.