IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

TOM HORNE, *Plaintiff/Appellant*,

*v.*

KATIE HOBBS, et al., *Defendants/Appellees*.

No. 1 CA-CV 24-0615

FILED 07-17-2025

---

Appeal from the Superior Court in Maricopa County
No. CV2023-013656
The Honorable Scott Minder, Judge

**AFFIRMED**

---

COUNSEL

Wilenchik & Bartness PC, Phoenix
By Dennis I. Wilenchik (argued), Garo V. Moughalian
*Counsel for Plaintiff/Appellant*

Arizona Attorney General's Office, Phoenix
By Joshua D. Bendor, Nathan Arrowsmith (argued), Kathryn E. Boughton
*Counsel for Defendant/Appellee Arizona Attorney General Kristin K. Mayes*

Gust Rosenfeld PLC, Phoenix
By Charles W. Wirken (argued), Robert D. Haws, Susan P. Segal
*Counsel for Defendants/Appellees Creighton Elementary School District,*
*Avondale Elementary School District, Cartwright Elementary School District,*
*Chandler Unified School District #80, Flagstaff Unified School District, Glendale*
*Elementary School District, Kyrene Elementary School District, Laveen*
*Elementary School District, Mesa Elementary School District, Osborn*
*Elementary School District*

Office of the Governor, Phoenix
By Sambo Dul
*Co-counsel for Defendant/Appellee Arizona Governor Katie Hobbs*

Coppersmith Brockelman PLC, Phoenix
By D. Andrew Gaona, Austin C. Yost (argued)
*Co-counsel for Defendant/Appellee Arizona Governor Katie Hobbs*

---

**OPINION**

Judge Paul J. McMurdie delivered the Court's opinion, in which Presiding Judge Anni Hill Foster and Judge Michael J. Brown joined.

---

**M c M U R D I E**, Judge:

¶1 Arizona's superintendent of public instruction ("Superintendent") appeals from the dismissal of his lawsuit against certain school districts ("School Districts"),[1] the Attorney General, and the Governor, relating to the public schools' use of an English-learner instructional model approved by the state board of education ("Board"). We affirm the dismissal because the Superintendent lacks the authority to sue and lacks standing to sue these defendants. We affirm the fee awards for the School Districts and the Attorney General because, although they

---

[1] The School Districts are: Creighton Elementary School District, Avondale Elementary School District, Cartwright Elementary School District, Chandler Unified School District #80, Flagstaff Unified School District, Glendale Elementary School District, Kyrene Elementary School District, Laveen Elementary School District, Mesa Elementary School District, and Osborn Elementary School District.

did not comply with Arizona Rule of Civil Procedure ("Rule") 54(g)(1), the award is mandatory under Arizona Revised Statutes ("A.R.S.") § 12-348.01.

## FACTS AND PROCEDURAL BACKGROUND

**¶2**        In 2000, Arizona voters passed initiative measure Proposition 203. Codified at A.R.S. §§ 15-751 to -755, Proposition 203 governs the public-school instruction of non-English-speaking and non-native-English-speaking children who cannot perform ordinary classroom work in English ("English learners"). The initiative statutes provide that "all children in Arizona public schools shall be taught English by being taught in English and all children shall be placed in English language classrooms." A.R.S. § 15-752. As for English learners, the statutes specify that they must be placed in "structured English immersion" ("SEI")[2] classrooms where "[b]ooks and instructional materials are in English," "nearly all classroom instruction is in English," "all reading, writing, and subject matter[s] are taught in English," and "no subject matter shall be taught in any language other than English." A.R.S. §§ 15-751(5), -752. An SEI placement is normally not expected to exceed one year. A.R.S. § 15-752. Once children acquire a good working knowledge of English and can handle regular schoolwork in English, they must be reclassified and moved to mainstream English language classrooms. *Id.* The statutes provide that an English learner's parent or guardian may waive the SEI placement in some cases, in which case the student must be placed in an alternative ("non-SEI") classroom that uses "bilingual education techniques or other generally recognized educational methodologies permitted by law." A.R.S. § 15-753.

**¶3**        After Proposition 203, the Legislature enacted additional statutes about English learner education. Those statutes include A.R.S. § 15-756.01, which directs the Board to adopt and approve research-based SEI and non-SEI models for use by school districts and charter schools. Under A.R.S. § 15-756.01, the Board adopted and approved several SEI models, including a "50-50 dual language immersion" model. The School Districts use the 50-50 model as SEI education without a parent or guardian waiver provided in A.R.S. § 15-753.

**¶4**        The Superintendent believes the 50-50 model is not an SEI model and can only be used as a non-SEI model with a parent or guardian's

---

[2]        "Sheltered English immersion" is an equivalent term. A.R.S. § 15-751(5).

waiver. The Superintendent sued in his official capacity against the School Districts, the Governor, and the Attorney General. By his second amended complaint, he sought declarations that (1) the 50-50 model is unlawful without the parental waiver; (2) A.R.S. § 15-756.01 is unconstitutional if it allows the model as SEI; (3) a waiver is required for non-English instruction of English learners; and (4) an Attorney General opinion on the topic is wrong.

¶5　　　　The defendants moved to dismiss for failure to state a claim under Rule 12(b)(6) and for failure to join the Board as an indispensable party under Rule 12(b)(7). The superior court granted dismissal under Rule 12(b)(6) because the Superintendent lacked the authority to sue and lacked standing. The court awarded attorney's fees and costs to each of the defendants. The court did not reach whether dismissal was warranted under Rule 12(b)(7).

¶6　　　　The Superintendent appealed. We have jurisdiction under A.R.S. § 12-2101(A)(1).

## STANDARD OF REVIEW

¶7　　　　We review *de novo* an order granting dismissal for failure to state a claim under Rule 12(b)(6). *Coleman v. City of Mesa*, 230 Ariz. 352, 356, ¶ 8 (2012). We will affirm if the plaintiff is not entitled to relief under any interpretation of the facts susceptible to proof. *Id.*

## DISCUSSION

¶8　　　　The superior court dismissed the Superintendent's action under Rule 12(b)(6) based on a lack of authority to sue and standing. We agree that dismissal was correct on these grounds. Like the superior court, we do not determine whether dismissal was warranted under Rule 12(b)(7).

**A.　　The Superior Court Correctly Ordered Dismissal for Lack of Authority to Sue.**

¶9　　　　Under the Arizona Constitution, the Board and the Superintendent are, with others, charged with "[t]he general conduct and supervision of the public school system." Ariz. Const. art. XI, § 2. The Constitution specifies that the elected Superintendent, an executive-branch officer who also serves as a member and the secretary of the Board, has powers and duties as "prescribed by law." Ariz. Const. art. XI, § 4; Ariz. Const. art. V, §§ 1, 9. The Superintendent has no common-law authority. *Godbey v. Roosevelt Sch. Dist. No. 66*, 131 Ariz. 13, 19 (App. 1981). All of his

4

authority as Superintendent must be found in statute. *See State ex rel. Brnovich v. Ariz. Bd. of Regents*, 250 Ariz. 127, 130, ¶ 8 (2020) (Our constitution's reference to state officers' powers and duties "prescribed by law" refers to statutory authority.); *State v. Ariz. Bd. of Regents*, 253 Ariz. 6, 9, ¶ 7 (2022) (same). Statutory powers may be expressed or implied. *Ponderosa Fire Dist. v. Coconino County*, 235 Ariz. 597, 602-03, ¶ 25 (App. 2014).

¶10　　　　The Superintendent is broadly charged with overseeing the Department of Education ("Department") by directing the Department's performance of its executive, administrative, and ministerial functions, as well as supervising the public schools. A.R.S. §§ 15-231(D), -251(1), (5). But the Board, not the Superintendent, is "the policy-determining body of the [D]epartment," "[e]xercis[ing] general supervision over and regulat[ing] the conduct of the public school system and adopt[ing] any rules and policies it deems necessary to accomplish this purpose." A.R.S. §§ 15-231(B)(1), -203(A)(1). Although the Superintendent must "[p]rovide information to the [Board] related to [the Board's] powers and duties," A.R.S. § 15-251(6), the Superintendent has no independent policy-making authority. His authority is limited to "[e]xecut[ing], under the direction of the [Board], the policies that have been decided on by the [Board]." A.R.S. § 15-251(4); *see also* A.R.S. § 15-231(B)(2) (The Superintendent is vested with "all executive, administrative and ministerial functions of the [D]epartment" and "is the executive officer responsible for the execution of policies of the [Board].");A.R.S. § 15-203(A)(7) (The Board must "[d]elegate to the [Superintendent] the execution of [B]oard policies and rules."). The Board is expressly authorized to contract, sue, and be sued, A.R.S. § 15-203(B)(1)-(2); the Superintendent is not, *see* A.R.S. §§ 15-251 to -261.

¶11　　　　As for English-learner education, the Superintendent is charged with identifying and reassessing English learners and overseeing the Department's funding administration and monitoring roles. A.R.S. §§ 15-756, -756.05, -756.04, -756.10, -231(D). But the Superintendent has no role in determining the instructional models available to the schools. The Board alone is allowed to adopt and approve lawful, research-based SEI and non-SEI education models for the schools' use. A.R.S. §§ 15-756.01(A)-(B), (D), -756.02(A).

¶12　　　　The Department, under the Superintendent's direction, must monitor and report on English-learner education, including ensuring schools' compliance with all state and federal laws. A.R.S. §§ 15-756.07, -756.08, -756.10. And if the Department determines that a school district or charter school is not complying with the law, it may

require the district or school to submit to a Department-approved corrective action plan. A.R.S. § 15-756.08(D)-(H). But if the Department finds continued non-compliance at a mandatory follow-up evaluation within one year, it lacks enforcement authority. *See* A.R.S. § 15-756.08(I)-(J). Instead, the Department must refer the matter to the Board, which alone has the power to make a non-compliance finding with a funding penalty. A.R.S. § 15-756.08(J).

¶13 The Superintendent concedes that no statute expressly authorizes him to sue but argues that his statutory duties give him implied authority to pursue declaratory relief about the lawfulness of Board-approved SEI models used by schools. But "[i]mplied powers do not exist independently of the grant of express powers and the only function of an implied power is to aid in carrying into effect a power expressly granted." *Vangilder v. Ariz. Dep't of Revenue*, 252 Ariz. 481, 488, ¶ 24 (2022) (quoting *Associated Dairy Prods. Co. v. Page*, 68 Ariz. 393, 395 (1949)). Implied powers exist when they "may be fairly implied from, and are necessary for, the complete exercise of [the] express powers." *Ponderosa Fire Dist.*, 235 Ariz. at 603, ¶ 25 (quoting *City of Phoenix v. Phoenix Civ. Serv. Bd.*, 169 Ariz. 256, 259 (App. 1991)); *see also McMichael-Gombar v. Phoenix Civ. Serv. Bd.*, 256 Ariz. 343, 347, ¶ 12 (2023) (Although a city charter restricted the board's powers and duties to those expressly outlined in the charter and personnel rules, the board could also exercise powers "necessarily implied to effectuate powers expressly granted.").

¶14 The Superintendent argues implied powers are "necessary" when they are "convenient or useful or conducive to [an express] power's beneficial exercise." This definition originates from caselaw interpreting the federal constitution's Necessary and Proper Clause. *See United States v. Comstock*, 560 U.S. 126, 133-34 (2010). But in the implied-powers context, "necessary" carries its conventional meaning—i.e., "required." *See City of Flagstaff v. Associated Dairy Prods. Co.*, 75 Ariz. 254, 259 (1953) ("[T]he act contains no express grant of power to municipalities which *requires* the aid of the above language to carry it into effect, thus giving it the dignity of an implied power . . . ." (emphasis added)); *see also City of Phoenix*, 169 Ariz. at 259 (Powers are strictly limited by the statutes creating them.). None of the Superintendent's statutory duties require that he obtain a judicial determination on an SEI model's constitutionality. Although he might find such a determination helpful in connection with his duties (through the Department) to monitor the schools, assess their compliance with state and federal laws, and refer non-compliance to the Board, *see* A.R.S. § 15-756.08, nothing about those duties requires him to obtain a court order. And the Board, not the Department, has the ultimate duty to determine

non-compliance and impose a sanction. *See* A.R.S. § 15-756.08(J). When it is necessary to resort to the courts, the Board and the students' parents or guardians are expressly empowered to sue non-compliant districts and schools. *See* A.R.S. §§ 15-203(B)(2), -754.[3]

**¶15** We are unpersuaded by the Superintendent's reliance on other lawsuits that he claims are "persuasive authority," which he cites to support his authority to sue under the English-learner statutes. He points to one federal lawsuit where he was a defendant (not a plaintiff), another federal lawsuit where a past Superintendent was a plaintiff, and a state-court lawsuit where the Secretary of State was a plaintiff. But none of these cases involved English-learner education. Nor does the Superintendent dispute that none of these cases analyzed his authority to sue.

**¶16** The superior court correctly ordered dismissal under Rule 12(b)(6) based on the Superintendent's lack of express or implied authority to sue.

## B. The Superior Court Correctly Ordered Dismissal for Lack of Standing.

**¶17** The superior court also found the Superintendent lacked standing. We conclude that dismissal was also warranted for lack of standing.

**¶18** Arizona courts require standing as a matter of judicial restraint, informed by federal law. *Arizonans for Second Chances, Rehab. & Pub. Safety v. Hobbs*, 249 Ariz. 396, 405, ¶ 22 (2020); *Bennett v. Napolitano*, 206 Ariz. 520, 525, ¶¶ 18-19 (2003). The standing requirement ensures that the judiciary is limited to exercising its judicial power. *Ariz. Creditors Bar Ass'n, Inc. v. State*, 257 Ariz. 406, 409, ¶ 11 (App. 2024); *see* Ariz. Const. art. III ("The powers of the government of the state of Arizona shall be divided into three

---

[3] A.R.S. § 15-754 provides that "[t]he parent or legal guardian of any Arizona school child" has "legal standing to sue for enforcement" of the Proposition 203 statutes. Although the statute uses the term "standing," the statute functions to confer authority to sue. *See* ¶ 19, *infra*. The statute contemplates only suits by parents or guardians. *See* A.R.S. § 15-754. A statute's "expression of one or more items of a class indicates an intent to exclude all items of the same class which are not expressed." *Pima County v. Heinfeld*, 134 Ariz. 133, 134 (1982).

separate departments, the legislative, the executive, and the judicial; and, except as provided in this constitution, such departments shall be separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others."). Standing is of particular concern when a dispute involves political challenges to executive-branch actions. *See Bennett*, 206 Ariz. at 525, ¶ 20 ("Without the standing requirement, the judicial branch would be too easily coerced into resolving political disputes between the executive and legislative branches, an arena in which courts are naturally reluctant to intrude.").

**¶19**        Although the concept of standing relates to the authority to sue, the inquiries are legally distinct. *State ex rel. Brnovich*, 250 Ariz. at 131, ¶ 11, n.2; *State ex rel. Montgomery v. Mathis*, 231 Ariz. 103, 111, ¶ 24 (App. 2012). The authority to sue hinges on whether a public officer or entity has a constitutional or statutory right to begin the litigation. *State ex rel. Brnovich*, 250 Ariz. at 131, ¶ 11, n.2; *State ex rel. Montgomery*, 231 Ariz. at 111-12, ¶¶ 24-25. Standing hinges on whether a plaintiff, who has the authority to sue, has a justiciable interest in the controversy at issue. *State ex rel. Brnovich*, 250 Ariz. at 130, ¶ 11, n.2; *State ex rel. Montgomery*, 231 Ariz. at 111-12, ¶ 24; *Bennett*, 206 Ariz. at 316, ¶¶ 18-19 (The federal standing requirements, as adopted in Arizona, require a party to ensure there is an "actual case or controversy."). Standing requires "allege[d] personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Bennett*, 206 Ariz. at 525, ¶ 18 (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). We hold that even if we found the Superintendent could sue, he failed to allege facts supporting standing against any of the defendants.

**¶20**        First, the Superintendent has not alleged that he has or will suffer an injury by the Attorney General's written opinion. An executive officer may obtain non-binding guidance from the Attorney General. *See* A.R.S. § 41-193(A)(7); *Yes on Prop 200 v. Napolitano*, 215 Ariz. 458, 469, ¶ 34 (App. 2007). But reviewing that guidance is not the role of the courts. *See Yes on Prop 200*, 215 Ariz. at 465, ¶¶ 14-16 (The courts have a responsibility to declare existing law, the Attorney General has a distinct responsibility to advise state government about the law upon request, and separation of powers prevents the courts from usurping the Attorney General's responsibility.). As an aside, we also note that here, the Attorney General's opinion expressly declined to address the lawfulness of the challenged model.

**¶21**        Second, the Superintendent has not alleged that he has or will suffer an injury because of any action or inaction by the Governor. The

Superintendent correctly points out that the Governor is constitutionally bound to ensure that the laws are faithfully executed and to appoint all other Board members with Senate approval. Ariz. Const. art. V, § 4; Ariz. Const. art. XI, § 3. But the Superintendent's pleading seeks no relief for the Governor's exercise of her duties and powers—he simply complains that she has publicly supported the 50-50 model. Moreover, because the Board is an independent government entity, it is speculative that any action by the Governor under her take-care power could redress the Superintendent's alleged harm.

¶22        Finally, the Superintendent has not alleged standing against the School Districts. The Superintendent contends he has standing because the part of Proposition 203 codified at A.R.S. § 15-754 exposes him to potential liability. *See Bd. of Educ. of Cent. Sch. Dist. No. 1 v. Allen*, 392 U.S. 236, 239-40 & 241, n.5 (1968) (School board members had standing to challenge the constitutionality of their statutory duty when they faced expulsion and funding losses if they refused to execute an unconstitutional duty.). Section 15-754 provides that "[a]ny school board member or other elected official or administrator who willfully and repeatedly refuses to implement the terms of [the Proposition 203 statutes] may be held personally liable for fees and actual and compensatory damages by the child's parents or legal guardian," "cannot be subsequently indemnified for such assessed damages by any public or private third party," and, if liable, "shall be immediately removed from office, and shall be barred from holding any position of authority anywhere within the Arizona public school system for an additional period of five years."

¶23        We reject the Superintendent's argument for several reasons. First, his injury is speculative. The statute limits liability to actors who "willfully and repeatedly refuse[] to implement" the Proposition 203 statutes. A.R.S. § 15-754. Even assuming the Superintendent's exercise of his duties qualifies as "implementation" of the statutes, he can only be liable for his willful conduct related to his performance of his duties. None of his allegations establishes the same. No defendant has the authority to "force" him, as he argues, to violate his duties and expose himself to liability under A.R.S. § 15-754. Second, the Superintendent has not alleged traceability or redressability as to the School Districts. Although school districts and charter schools may propose instructional models, only the Board has the authority to approve models for use. A.R.S. § 15-756.01(A), (C). The School Districts have no final say in which models they may choose from, and the Superintendent acknowledges they are using the 50-50 model in accordance with the Board's directions. *See* A.R.S. §§ 15-756.01(A) & (C), -756.02(B)-(C).

¶24          The Superintendent relies on *Arizona Republican Party v. Richer*, 257 Ariz. 237 (2024), to argue that he may obtain declaratory relief against the School Districts because they implemented the Board's model. We note that *Richer*, which involved a challenge to a vote-counting procedure, did not hold that all entities with implementation roles would be proper defendants. *See id.* at 240-41, 244, ¶¶ 3, 6, 18-20. Recognizing that a suit may be brought against any "entity or official that has the ability to control the implementation" of a challenged law, *Richer* held that the plaintiffs' initial failure to name the Secretary of State as a defendant did not make the complaint groundless because, among other things, the plaintiffs named county defendants charged with executing the challenged procedure. *Id.* at 244, ¶¶ 18-20 (quotation omitted). But *Richer* stopped short of holding that the county defendants were proper, describing them as only "arguably" and "debatabl[y]" so. *Id.* at ¶¶ 19-20. In any event, the Superintendent lacks standing against the School Districts based solely on the lack of a non-speculative injury.

¶25          The Uniform Declaratory Judgment Act (A.R.S. §§ 12-1831 to -1846) does not change our conclusions about standing as to any of the defendants, even under the broad opportunity for relief it provides under A.R.S. §§ 12-831 and -835. Although an action for declaratory relief is remedial and to be liberally construed, A.R.S. § 12-1842, the plaintiff must have an underlying cause of action, *Ansley v. Banner Health Network*, 248 Ariz. 143, 151, ¶ 31 (2020). Nor may relief include "a judgment which is advisory only or which merely answers a moot or abstract question; a mere difference of opinion will not suffice." *Ariz. State Bd. of Dirs. for Junior Colls. v. Phoenix Union High Sch. Dist.*, 102 Ariz. 69, 73 (1967). Relief is also unavailable "when a defendant has no power to deny the plaintiff's asserted interests" — the defendant must be "an entity or official that has the ability to control" the challenged action. *Yes on Prop 200*, 215 Ariz. at 468, 470, ¶¶ 29, 36.

¶26          As we have explained, none of the defendants could control the Superintendent's performance of his duties, and his injuries are speculative. The superior court correctly ordered dismissal under Rule

12(b)(6) based on the Superintendent's lack of standing even under the Act's relaxed standard. We affirm the dismissal of the action.[4]

## C. The Superior Court Correctly Awarded Attorney's Fees.

**¶27** The Superintendent argues the superior court erred by awarding the Attorney General and the School Districts attorney's fees under A.R.S. § 12-348.01 because their request did not comply with Rule 54(g)(1)'s mandate that "[a] claim for attorney's fees must be made in the pleadings or in a Rule 12 motion filed before the movant's responsive pleading." Although we generally review fee awards for abuse of discretion, we review the interpretation of rules and statutes *de novo*. *In re the Restated Tr. of Crystal H. West*, 249 Ariz. 355, 357, ¶ 7 (App. 2020) (rules); *Canon Sch. Dist. No. 50 v. W.E.B. Constr. Co.*, 177 Ariz. 526, 529 (1994) (statutes).

**¶28** After the Superintendent filed his second amended complaint, each defendant filed a separate motion to dismiss on the court-set deadline. But only the Governor's motion requested attorney's fees, citing, as relevant, A.R.S. § 12-348.01.

**¶29** The Attorney General and the School District filed "joinders" in the Governor's fee request under A.R.S. § 12-348.01. In the dismissal order, the superior court only awarded the Governor her fees because she was the only party to claim them in her Rule 12 motion. But when the Attorney General and the School Districts pointed to their joinders, the court found all fee requests timely and awarded each defendant group around $40,000 in fees.

**¶30** Rule 54(g)(1) provides that attorney's fees "must" be claimed in the pleadings or a Rule 12 motion. This rule ensures that parties receive notice of the risk of bearing their opponents' fees, thereby encouraging settlements. *In re Restated Tr. of Crystal H. West*, 249 Ariz. at 358, ¶¶ 8-10.

---

[4] We note that even if we concluded dismissal were improper, we could not, as the Superintendent requests, declare the 50-50 model illegal. The most we could do would be to reverse the dismissal and permit the superior court to decide the merits. *See City of Flagstaff v. Ariz. Dep't of Admin.*, 255 Ariz. 7, 14-15, ¶¶ 26, 28-29 (App. 2023) (An appellate court is a court of review; decisions in the first instance are for the superior court to make on a developed record.).

Normally, a court may not award fees when a party disregards the rules of procedure. *Id.* at 358-60, ¶¶ 8-10, 15-16.

¶31 The Attorney General and the School Districts did not comply with Rule 54(g)(1). Their joinders were neither Rule 12 motions nor filed by the court-set Rule 12 deadline, and their reliance on caselaw recognizing judicial discretion to allow untimely fee applications is misplaced—those cases relied on a rule provision that, unlike Rule 54(g)(1), expressly allowed the court to extend a post-judgment deadline. *See, e.g., Aztar Corp. v. U.S. Fire Ins. Co.*, 223 Ariz. 463, 479-80, ¶¶ 60-62 (App. 2010) (Where the relevant version of Rule 54(g)(2) provided that a motion for attorney's fees "shall be filed within 20 days from the clerk's mailing of a decision on the merits of the cause, unless extended by the trial court," the court could extend the deadline absent prejudice.). Nor did the joinders make clear that the Attorney General and the School Districts were seeking their fees rather than supporting the Governor's request for her fees. The joinders simply stated that they "join[ed] in Defendant Governor Katie Hobbs' request . . . for attorneys' fees under A.R.S. § 12-348.01."

¶32 But despite the Attorney General and School Districts' failure to comply with Rule 54(g)(1), the court was still required to award the fee claims under A.R.S. § 12-348.01, which makes the award mandatory. Section 12-348.01 provides that "if a[] . . . governmental officer acting in the officer's official capacity . . . files a lawsuit against this state, or a[] . . . governmental officer acting in the officer's official capacity[,] . . . the court *shall* award reasonable attorney fees to the successful party in the action." A.R.S. § 12-348.01 (emphasis added).[5] *See also City of Tempe v. State*, 237 Ariz. 360, 367, ¶¶ 26-27 (App. 2015) (Section 12-348.01 provides mandatory fee awards in any lawsuit.). The language of the statute, which the Superintendent triggered by petitioning, does not give a court the discretion to refuse a reasonable fee request.

¶33 The superior court correctly awarded the mandatory fees to the Attorney General and the School Districts, and we affirm the awards.

**ATTORNEY'S FEES AND COSTS**

¶34 The Superintendent and each defendant request attorney's fees on appeal under A.R.S. § 12-348.01, and the Governor also requests fees

---

[5] School districts are political subdivisions of the state. *Amphitheater Unified Sch. Dist. #10 v. Harte*, 128 Ariz. 233, 234 (1981).

under A.R.S. § 12-349. Under A.R.S. § 12-349, we may award fees and sanctions in any civil action when claims are brought without substantial justification.

¶35       We deny the Superintendent's fee request and grant the defendants' fee requests under A.R.S. § 12-348.01 because the defendants prevailed on all claims. We similarly grant the defendants their costs under A.R.S. § 12-341. Having awarded fees under A.R.S. § 12-348.01, we need not assess the Governor's fee request under A.R.S. § 12-349. The Governor, the Attorney General, and the School Districts may recover reasonable appellate attorney's fees and costs upon their compliance with ARCAP 21.

## CONCLUSION

¶36       We affirm.

